# Staunton.

## WELFLEY v. SHENANDOAH I., L., M. & M. CO.

### SEPTEMBER 29th, 1887.

1. CHANCERY PRACTICE—*Pleadings—Evidence—Fraud.*—A court of equity can only decree on the case made by the pleadings. Evidence of matters not noticed in the pleadings will be of no avail. Fraud, not put in issue by the pleadings, cannot be introduced by depositions. *Gregory* v. *Peoples*, 80 Va. 355.

2. SPECIFIC PERFORMANCE—*Sale of land—Unrecorded deed—Case at bar.*— W. bought land of S., paid part, got possession, and made improvements, but did not call for conveyance till a few months before last payment was due. He then learned that the land had been conveyed before he bought it to M., whose deed was then unrecorded, but which was recorded that day, when a deed reconveying the land to S. was also recorded.

· HELD:
   W. is entitled to specific performance of sale to him.

3. IDEM—*Evidence of fraud—Particeps fraudis—Case at bar.*—In that suit no averment of fraud was in the bill, but defendant introduced evidence to prove that W. had requested S. to convey the land to M. in order to defraud W.'s creditors.

` HELD :
   Defendant's showing himself to be *particeps fraudis*, could not make defense of the fraud, which had not even been alleged.

4. CORPORATIONS—*Change of name.*—Action against corporation in its former name cannot be defeated by showing that it had changed its name without any change of its membership.

Appeal from decree of circuit court of Page county, entered April 24th, 1885, in the cause of A. J. Welfley, plaintiff, against the Shenandoah Iron, Lumber, Mining and Manufacturing Company and Benjamin Milnes, de-

fendants, to enforce specific performance of a contract for the sale of land entered into by Welfley with said company. At the hearing the bill was dismissed, with costs, and complainant appealed. Opinion states the case.

*Park & Welfley*, for the appellant.

*Menefee & Smoot*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The complainant filed an original and an amended bill, and they both allege that, on the seventh day of December, 1882, the appellant (A. J. Welfley) purchased of the appellee (the Shenandoah Iron, Lumber, Mining and Manufacturing Company) lot No. 6, section D, in the town of Milnes, Page county, Va., for $150, payable fifty dollars at the time of the purchase, and the residue in semi-annual instalments, with six per centum interest on the first days of June and December, 1883 and 1884; that on the seventh day of December, 1882, appellant paid the cash payment of fifty dollars on the said lot to Charles H. Price, assistant secretary of said company, who was fully and expressly authorized by the said company to negotiate, sell, and convey the same and to receive the purchase-money, and who at the time executed and delivered to appellant the receipt for the same, which is filed with the original bill, as follows: "*Milnes, Va.*, December 7, 1882. Received of Mr. A. J. Welfley fifty dollars, being the first instalment on lot 6, section D, sold him this day for $150, payable fifty dollars at time of sale, and balance in semi-annual instalments, with six per cent. interest, on first days of June and December, 1883 and 1884. CHARLES H. PRICE, Ass't Secr'y"; that appellant at once, with the knowledge and consent of the appellees, took possession of the said lot, and built a

dwelling-house and other valuable improvements thereon at a cost of $2,000 or more, and has lived upon the said lot from the completion of the said improvements' to the present; that on or about the first day of February, 1884, some months before all the said deferred payments of the purchase-money became due under the terms of the said contract, appellant offered to anticipate the payments, and to pay the whole residue of the purchase-money on the said lot, and demanded a deed to himself for the said lot, which said Price, secretary, promised should be prepared, executed and delivered to appellant on the twentieth day of February, 1884, the day designated by appellant on which he would pay the said residue of the purchase-money; that before the said twentieth of February, 1884, appellant learned for the first time that the said lot had been conveyed by the said company to Benjamin Milnes, by deed dated December 1, 1882, but which had not been recorded, when appellant demanded his deed, and which was not recorded till February 25, 1884, at which time a deed was also recorded from Benjamin Milnes, dated February 18, 1884, conveying the said lot, with the improvements thereon made by appellant, back to said Shenandoah Iron, Lumber, Mining and Manufacturing Company.

The bills charge that the said company and Benjamin Milnes perpetrated a fraud upon appellant, and pray that the said deeds may be revoked and the said lot be conveyed to appellant; and they aver that appellant had no knowledge or intimation that the said deed had been or would be made to Benjamin Milnes until in February, 1884, he learned that said Benjamin Milnes had in his possession a deed from the said company to him, dated December 1, 1882, for the said lot; whereupon appellant at once made demand upon the said company to comply with their contract made with appellant, and to execute and deliver to him a deed for the said lot; and, upon the

refusal of the said company to do so, appellant instituted this suit, and filed his original and amended bills.

The defendants (appellees) answered the bills, and demurred, upon the ground that the defendant company had changed its name since the suit was instituted, and without any change of membership; which demurrer the court overruled, and ordered the cause to proceed in the name of the Shenandoah Iron Company. Depositions were taken, and upon the final hearing the bills were dismissed, at the cost of complainant, on the holding of the court that the complainant had been guilty of fraud, and therefore it could not grant the prayer of the bills.

The answers of the appellees do not charge, or even intimate, fraud against the appellant, but, on the contrary, expressly deny it; and it is nowhere put in issue in the pleadings. "Fraud not put in issue by pleadings, cannot be introduced by depositions." *Knibb's Ex'or* v. *Dixon's Ex'or*, 1 Rand. 249. "Fraud is never presumed; it must not only be alleged, but it must be strictly and clearly proved as alleged." *Crebs* v. *Jones*, 79 Va. 381–384. "Fraud, since it must be clearly proved, must be distinctly alleged." *Gregory* v. *Peoples*, 80 Va. 355–359. "Evidence as to matters not noticed in the pleadings will be of no avail." "Where the defendant stated upon his answer, certain facts as evidence of a particular case which he represented to be the consequence of those facts, and upon which he rested his defense, he was not permitted, afterwards, to make use of the same facts for the purpose of establishing a different defense from that to which, by his answer, he had drawn the plaintiff's attention." Sand. Eq. 325, and notes 272 and 273; Daniell, Ch. (Ed. 1871) 712, 713; *Sale* v. *Dishman's Ex'ors*, 3 Leigh, 548. "A court of equity can only decree upon the case made by the pleadings." *Mundy* v. *Vawter*, 3 Gratt. 518–528; *Vide Swope* v. *Chambers*, 2 Gratt. 319.

The appellees, in their evidence, attempt to make a case inconsistent with and diametrically contradictory to the one they make in their pleadings, and while they swear, in their answers and in their depositions, explicitly and emphatically, that the appellant had nothing to do with the purchase of the lot in question by Benjamin Milnes, or in the making of the said deed to him for the said lot by the said company, they attempt to prove by Charles H. Price, in Philadelphia, their former secretary, that the said deed of December 1, 1882, from the said company to Benjamin Milnes for the lot was made to him by the request and direction of the appellant to enable appellant to hinder and defraud his creditors. The appellees swear, in their answers and in their depositions, that a sale, or any sale of the said lot, was never made to the appellant on the seventh day of December, 1882, or at any other time previous or subsequent; but that the lot was sold to Benjamin Milnes on the first day of December, 1882; and the deed dated on that day was made and delivered on that day to Benjamin Milnes for the said lot; and they introduce the witness C. H. Price, their former secretary, who sold the lot to appellant on the seventh day of December, 1882, and who received the money and gave the written contract of sale for it on that day, to testify that he did, as the agent of the company, sell the lot to the appellant on the seventh day of December, 1882, and executed and delivered to him the written contract of sale and receipt; but that about an hour after the sale Welfley, the appellant, came to him and told him to execute the deed to Benjamin Milnes, giving as his reason that he wished to protect it from the lien of some judgments against the firm of J. P. Welfley & Bro., of which firm he was a member; and that he made the deed accordingly, subsequent to the sale, and the date, execution and delivery of the said written contract of sale on the seventh of December, 1882, and that Benjamin

Milnes accepted the deed with this knowledge, and as *particeps fraudis* with the appellant in the avowed design to defraud his creditors. But Benjamin Milnes, in his answer and in his deposition, flatly contradicts the witness Price, and swears positively that he bought the lot himself from the said company, and that appellant was not known in the transaction which took place on December 1, 1882; that the deed was made on that day, and that there was never but that one deed made to him for the said lot. William Milnes, the president of the said company and the father of Benjamin Milnes, swears to the same facts that Benjamin Milnes does, and flatly contradicts their own witness, Price; and when we look to the deed, we find it dated December 1, 1882, a date expressly and particularly specified and sworn to by Benjamin Milnes and William Milnes as the actual day of its execution, six days before the sale made to Welfley, and before the written contract of sale signed, executed, and delivered by Price to appellant. Welfley, the appellant, swears positively in his deposition that he never gave Price any such instructions or suggestions in reference to the execution of the deed. He says that he did tell Price some days after the sale to him, on the seventh December, 1882, not to make the deed to him *then*, owing to some judgments; but that he would call for the deed when he wanted it. But it is not to be presumed that Welfley, the appellant, because he did not then want the deed, meant to defraud his creditors. He denies it expressly and solemnly, and the facts fully proven in the record exclude the possibility of such a purpose. He took possession of the lot as his own, bought lumber and material in his own name, made contracts for erecting buildings and other costly improvements upon it, paid out money and took receipts in his own name, moved into the dwelling when it was finished, and has occupied and claimed it as his own individual property

ever since, without question or demand for rent by the appellees or by any one else; and, while the fact stands out prominently and significantly that no such deed as alleged was ever made to Benjamin Milnes, he (appellant) is now asking the specific execution of his contract of purchase, and a decree for a deed to him for the property, in his own name—now enhanced by several thousand dollars in value. Those who worked upon the buildings and other improvements upon the property testify that they believed the property belonged to Welfley, and that their opinion was based upon the words and actions of Welfley himself, and the statements of Benjamin Milnes at the time. The evidence fully establishes appellant's claim to the relief he asks for in his bill. The record is conclusive that the contract was definite and certain; that appellant was put in possession of the property purchased; that the consideration was adequate; that appellant has erected costly and permanent improvements on the lot, and has performed the contract on his part, so far as he has not been prevented by the act of the vendor; and that he is ready, willing, and able to perform it entirely under the decree of the court.

The competency of the parties to this suit to contract, and the right of the one to sell, and of the other to buy, the property in dispute, have not been, and cannot be questioned. The court is not left to make a contract from verbal testimony, nor to construe doubtful provisions in a written contract. William Milnes, the president and manager of the company, appellee, testified that C. H. Price, secretary, had full authority to sell the lots of the said company; that, in fact, he alone had full charge of that branch of the business. And C. H. Price testified that he sold the lot in question to A. J. Welfley, the appellant; received the money therefor; executed and delivered the receipt and contract of sale filed by appellant as part of

his bill, and that the said receipt and contract of sale is in good faith what it purports to be. By this contract the appellees are bound, and they will not be permitted to contradict their written contract by parol evidence, nor to evade their contract and defeat the claim of the appellant (who is a *bona fide* purchaser for value and without notice), by the device of a pretended or actual unrecorded deed to Benjamin Milnes, and a deed from him back to the said company, for the lot. The appellees failed to allege fraud. They are estopped from attempting to prove it. The record discloses no fraud, and the complainant makes out his case for relief without disclosing fraud; and the appellees will not be allowed to defeat appellant's claim to relief by attempting to show that they are equally guilty with the appellant in the imputed fraud. 1 Smith, Lead Cas. pt. 1 (Ed. 1866), note, and cases there cited.

Benjamin Milnes claims that he advanced $1,050 on the buildings put by Welfley upon the lot, but, upon cross-examination, he admits that Welfley, the appellant, was in his employ when the said lot was purchased, and prior and subsequent thereto, and does not claim to have paid him for his services, but admits that he is indebted to appellant. Appellant says, in his deposition, that Benjamin Milnes owes him for twenty-one months' services, at $50 per month for part of that time, and at $100 per month for the residue of that time; and that all the moneys advanced by Benjamin Milnes, or merchandise furnished out of his store, on the work or to the workmen, were charged to him (appellant) upon the books of Benjamin Milnes; and this statement is not denied by any evidence in the record. It thus appears that Benjamin Milnes has been fully paid for every dollar that went into the property through him, either in money or in merchandise, and that the entire expenditure was paid for by the means and services of the appellant. The "Shenandoah Iron Company"—which is

but a new name, *pendente lite,* of the defendant company, without any change of membership or composition—hold the title to the property as trustees for the appellant, the vendee, who is entitled to call for the legal title.   1 Lomax Dig. 234, *et seq.; Vanmeter* v. *Vanmeters,* 3 Gratt. 148; *Peatross* v. *M'Laughlin,* 6 Gratt. 65; 2 Story Eq., § 1212; Bisp. Eq. 137.

The decree complained of is erroneous, and is reversed and annulled, and the cause will be remanded to the circuit court of Page county, with instructions to decree specific performance of the contract as prayed for in the bills, upon condition that the appellant shall pay the unpaid balance of the purchase-money.

DECREE REVERSED.