## �export𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡

### LINKOUS, ETC., v. STEVENS AND OTHERS.

#### November 12, 1914.

1. JUDGMENTS—*Validity—Jurisdiction—What Constitutes.*—A judgment which passes upon matters entirely outside of the issue raised by the pleadings is to that extent invalid. Jurisdiction consists in the right to adjudicate concerning the subject matter in the given case. To constitute it, the court must have cognizance of that class of cases, the parties must be present, and the point decided must be, in substance and effect, within the issue made by the pleadings.

2. ESTOPPEL—*Matters Outside of Issue—Judgments—Opportunity to be Heard—Notice.*—While it is the policy of the law to settle disputes between litigants once and for all, when brought before courts of competent jurisdiction, it is also the policy of the law to put every litigant on notice, by proper pleadings, of what he is called upon to meet; and when he has this notice, to give him an opportunity to make defense thereto, but the courts have never gone to the extent of holding that a party, infant or adult, is estopped to assert a right by reason of adjudication in a proceeding to which he was never a party or a privy of a party litigant, and in which his rights in and to the subject matter of litigation were at no time put in issue, and he given an opportunity to be heard in the assertion or defense of his rights.

3. JUDGMENTS—*Matters Outside of Issue—Collateral Attack.*—A judgment or decree which is entirely outside of the issue raised in the record is invalid and will be treated as a nullity even in a collateral proceeding. No conclusive effect can be given to a judgment which is absolutely void, whether its invalidity results from want of jurisdiction over the parties or over the subject-matter of the controversy, or from a want of authority in the court to go beyond the pleadings and evidence and render a judgment on a matter not in issue or not submitted to it.

Appeal from a decree of the Circuit Court of Taze-

well county.    Decree for the complainant.   Defendant appeals.

*Reversed.* ·

The opinion states the case.

*Harman & Pobst,* for the appellant.

*H. M. & T. R. Bandy* and *Greever & Gillespie,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

John T. Linkous died in Graham, Tazewell county, Virginia, in 1892, seized and possessed of a lot of 7½ acres of land, with improvements thereon, situated in the town of Graham, and known as the "Linkous Reservation," and also a tract of 270 acres of land which he had sold to the Graham Linkous Imp. Co., to be divided into lots, but which in default of payment of the purchase money, was, after his death, conveyed back to his estate. He left surviving him a widow, Martha J. Linkous, and the following children, M. B. Linkous, B. W. Linkous, M. M. Stevens, wife of G. B. Stevens, and E. J. Suthers, wife of T. F. Suthers.

By deed dated January 26, 1893, and duly recorded September 19, 1895, M. B. Linkous and wife, E. J. Suthers and M. M. Stevens and their husbands, "in consideration of one dollar and of the love and affection which the said parties of the first part have and bear towards the said party of the second part," conveyed their respective interests in the 7½ acres of land, the "Linkous Reservation," to Martha J. Linkous, the mother of M. B. Linkous, E. J. Suthers and M. M. Stevens.    In the body of this deed the names of B. W. Linkous and I. B. Linkous, his wife, appear as grantors, but B. W. Linkous did not sign or acknowledge it as did his wife.

In March, 1897, N. Hockman, a judgment creditor of Moses Henry and B. W. Linkous, partners as Henry & Linkous, brought a chancery suit in the Circuit Court of Tazewell county against them, making also parties defendant thereto the widow and heirs of John T. Linkous, deceased, the object of the suit being the collection of complainant's judgment against Henry & Linkous for $1,002, with interest and costs, by subjecting to the payment thereof whatever real estate in Tazewell county the court might ascertain was owned by B. W. Linkous, and the bill alleged that B. W. Linkous owned an undivided one-fourth interest in said 270 acres of land, but did not mention or involve the said 7½ acres.

Martha J. Linkous, widow, and M. B. Linkous, M. M. Stevens and E. J. Suthers, children of John T. Linkous, deceased, filed a joint answer and cross-bill in the cause, setting up that B. W. Linkous did not own any interest in the said 270-acre tract of land on account of advancements to him by his father of more than his share of the estate left by the father, and that the judgment of complainants was, therefore, not a lien on any part of the said 270 acres.

The cause was referred to a special commissioner on the questions raised by the answer and cross-bill, and he was ordered to report on the question of advancements and the real estate owned by John T. Linkous at the time of his death. In the report of the commissioner the 7½ acres or "Linkous Reservation" is, for the first time in the proceeding, mentioned, he reporting it as having belonged to John T. Linkous at the time of his death, and that its then value was $1,500; it being necessary, as a matter of course, to so mention this piece of property in the report in order to get before the court the amount of property owned by John T. Linkous at his death, so that it could be ascertained how much in

value each heir was entitled to, and whether B. W. Linkous had gotten as much as his share in his deceased father's estate by way of advancement.

On January 5, 1899, some months before the report of the commissioner was filed, Martha J. Linkous, widow, conveyed the 7½ acres, the "Linkous Reservation," to her son, M. B. Linkous, for life, with remainder to his son, John Mervin Linkous, an infant. On December 14, 1899, nearly a year after the 7½ acres had been so conveyed to said infant, who was not then or at any time a party to said cause, and the deed therefor recorded in Tazewell county clerk's office, and when this 7½ acres had never been brought into the controversy or in issue at all therein, but was only in evidence in the cause for the purpose of ascertaining the amount of property owned by John T. Linkous at the time of his death, the court by its decree in the cause adjudicated, not only that B. W. Linkous had no interest in his father's estate on account of advancements made to him by his father, and that M. B. Linkous, M. M. Stevens and E. J. Suthers, subject to the dower of the widow, Martha J. Linkous, were entitled to the 270-acre tract of land, but went further and adjudicated that M. B. Linkous, M. M. Stevens, and E. J. Suthers, were also entitled to the 7½ acres, subject to the widow's dower therein, and appointed a commissioner for the purpose and ordered him to make a deed to M. B. Linkous, M. M. Stevens and E. J. Suthers for the 7½ acres, which he did on January 1, 1900. In this condition the *Hockman case* remained on the docket for nine years—until Martha J. Linkous had died —and then it was called up and a decree entered confirming said deed of the commissioner and dismissing the cause from the docket.

Martha J. Linkous died in 1907 and M. B. Linkous, father of the infant, John M. Linkous, died in September,

1911, and in February following, more than 19 years after the execution of the deed assailed and more than 17 years after its recordation, M. M. Stevens and E. J. Suthers filed their bill in this cause against the infant, John Mervin Linkous, their nephew, alleging fraud in the procurement of the deed of January 26, 1893, from complainants and others to their mother, Martha J. Linkous, in fee simple, in that the mother had represented to them that the deed was to her only for life, and they signed the deed without reading it; but they admit in their bill that "shortly" after they signed the deed and before it was recorded they ascertained that it was for a fee simple interest in the 7½ acres it conveyed.

Their mother, it will be observed, lived fourteen years after they discovered, as they admit, what the deed was for, and their brother, M. B. Linkous, who was the vendee of the life estate in the 7½ acres conveyed by the deed from their mother of January 5, 1899, and father of the infant defendant, John Mervin Linkous, lived nearly 19 years after this discovery of the fraud alleged to have been perpetrated upon them by their mother. Both of said deeds were of record in Tazewell county clerk's office for some years prior to the death of Martha J. Linkous and M. B. Linkous, where complainants at all times had access, yet they took no action to assail either deed until the lips of their mother and brother were closed from giving evidence, and then within five months after both were dead complainants bring this suit charging not only fraud against their deceased mother and brother, but that they didn't acknowledge the deed from them to their mother of January 26, 1893, and that the certificate of their acknowledgement thereto, on the part of the notary, S. M. Graham, was false and fraudulent, etc.

The infant defendant, John Mervin Linkous, by his

guardian *ad litem,* H. Claude Pobst, and said guardian *ad litem* for the infant, filed a demurrer and answer to the bill, the answer specifically denying all the allegations in the bill of fraud, etc., and averring that Martha J. Linkous and M. B. Linkous, for themselves and the infant, John Mervin Linkous, had had exclusive possession of the property in question since 1893, when the deed was made to Martha J. Linkous by complainants and others, and had received the rents, issues and profits thereof, kept it in repair and paid taxes thereon during that time.

The demurrer was overruled, and after the answer was filed an examination of the records of Tazewell county by the guardian *ad litem* for the infant defendant disclosed that the 7½ acres of land in controversy had been conveyed, as above stated, by a commissioner of the court in the *Hockman case* to the complainants here and M. B. Linkous, and that the decree of December 14, 1899, found in the court's chancery order book, directed the conveyance. All of the decrees or orders in the *Hockman case* were found in the chancery order book, but the papers in the cause could nowhere be found, though strict search lasting several days was made for them, both by the guardian *ad litem* for the infant defendant in this cause and by the clerk of the court. On account of said papers being lost this cause was several times continued, but finally, as the decrees and deed in the *Hockman case* seemed on their faces to absolutely settle the controversy, and the guardian *ad litem* did not know the contents of the pleadings or other papers in the *Hockman case,* which he had not been able to find, and as he had no reason to even suspect that the court had, by its decrees in that cause, exceeded its jurisdiction, could give no good reason why a decree should not be entered in this cause against the infant defendant. Thereupon, a decree was entered on February 24, 1913,

granting to complainants the relief they prayed in their bill and adjudicating the 7½ acres of land to complainants, and the heirs of M. B. Linkous, deceased, as conveyed to them by the deed of the commissioner in the Hockman suit, on the ground of fraud as alleged in the bill, and on the further ground that the title to the 7½ acres was *res adjudicata* by reason of the decrees in the Hockman suit.

Before the next term of the court after the decree just mentioned was rendered, the papers in the Hockman suit were found, and the essential parts of their contents have been above referred to. At the term of the court following the finding of these papers the guardian *ad litem* for the infant defendant in this cause asked that he be allowed to file his bill of review to have the cause reopened and reheard, on the ground of after-discovered evidence, the after-discovered evidence being the original papers in the Hockman suit, which papers did not warrant the adjudication in the decree in the cause at the preceding term of the court; but the court refused to allow the bill of review to be filed, and the 7½ acres of land in question was ordered to be sold by commissioners, as not being susceptible of partition in kind.

At the November term of the court following (1913), the guardian *at litem* asked leave to file on behalf of the infant defendant an amended and supplemental bill of review, renewed his motion theretofore made to file the original bill of review, and asked also that, if necessary, both bills of review be treated as petitions for rehearing, but the court refused to allow them to be filed; whereupon, the infant defendant, by his guardian and his next friend, applied for and obtained this appeal.

The several rulings of the lower court above mentioned are assigned as error in the petition for the appeal, but as we view the case, it is only necessary to consider

whether or not the title to the 7½ acres of land which
is the subject matter of this controversy, was finally set-
tled in the Hockman suit—that is, whether or not the
decrees entered in that cause are *res adjudicata* as to the
title of appellant to said property.

As has been observed, appellant was never a party in
any way whatever to this Hockman suit, nor was the 7½
acres of land he owned by title of record, conveyed to
him by Martha J. Linkous by the deed of January 5,
1899, in any way in issue or involved in that cause, or
even mentioned, except in the report of the commissioner
of the facts touching the question whether or not B. W.
Linkous had, as a matter of fact, received advancements
equal to or exceeding his share in the estate of his de-
ceased father, a question with which appellant here was
not then or thereafter in the least concerned. It may be
true that Martha J. Linkous united with M. B. Linkous
and appellee, E. J. Suthers and M. M. Stevens, in a cross-
bill filed in the *Hockman case,* ignoring and treating her
deed of January 26, 1893, conveying a fee simple estate
in remainder in the 7½ acres of land to appellant, after
a life estate in his father, as a nullity; but we know of no
rule of law that would make such a concession or ad-
mission on the part of a grantor of property in a good
and valid deed of conveyance binding upon his grantee,
or that would warrant a court of equity in so holding in
a cause to which the grantee was never a party or his
rights in any way in issue or involved by the pleadings
in the cause or otherwise. Appellant in this cause might
have been made a party defendant to the bill in the *Hock-
man case,* or he might have been made a party defend-
ant to the cross-bill in that cause, but he was not made
a party to either, and hence he was tendered no issue by
the original bill or by the cross-bill to which he could
have demurred or pleaded. A court of equity can only

decree on the case made by the pleadings, and evidence of matters not noticed in the pleadings will be of no avail; hence, fraud, not put in issue by the pleadings, cannot be introduced by depositions. *Welfley* v. *Shenandoah, &c.,* 83 Va. 768, 3 S. E. 376.

In the same report, 83 Va. 232, 2 S. E. 36, 5 Am. St. Rep. 262, is the case of *Seamster* v. *Blackstock,* where a decree in a former case was relied on as being *res adjudicata,* and in which earlier case the widow of Blackstock filed the bill against the heirs for the purpose of having dower assigned to her, making the heirs defendants. The court not only directed dower to be assigned to the widow and complainant, but decreed a sale of the residue of the land for partition among the heirs. This court reversed that decree, and in its opinion said: "Here the county court, in decreeing a sale of the residue of the land, after allotting the widow's dower, went far beyond the case made by the bill, or anything contemplated thereby, and plainly exceeded its jurisdiction, the result of which is, the proceedings under the decree of sale are void, and may be attacked collaterally. . . .

"It is an elementary principle in our jurisprudence, that jurisdiction of the subject matter and the parties is essential to the conclusivenes of a judgment or decree. And though a court may obtain jurisdiction rightfully, yet its decrees may be void, because, in the progress of the cause, it has exceeded its jurisdiction. The adjudged cases furnish numerous examples of this kind. Thus, where a bill is filed to sell a certain lot, and a decree is entered for the sale of another and different lot, not named in the bill, and to which the bill has no relation, such decree, as respects the last mentioned lot, is a nullity."

The case of *Eaves* v. *Vial,* 98 Va. 134, 34 S. E. 978, is also in point, in which it appeared that E. P. Vial died

leaving real estate; that one of his sons, the appellee in
the case in this court, had been dissipated and had con-
veyed his interest in his father's real estate to his sister,
Mrs. Eaves, the appellant, without consideration, feel-
ing that he could not trust himself with the property,
the same, however, to be reconveyed to him when he re-
quested it; that after this deed was made a partition suit
was brought, to which young Vial and Mrs. Eaves were
parties and the interest of both in the property parti-
tioned was laid off to Mrs. Eaves as the sole owner
thereof. Later in the suit appealed to this court, brought
by young Vial against his sister, Mrs. Eaves, to regain
the property he had conveyed to her, the defense relied
on by the defendant as a bar to young Vial's right of
recovery in that suit was the former suit for partition,
but the court held that the former suit was no bar, say-
ing in its opinion by Buchanan, J.: "Without passing
upon the question whether that defense could be made
by demurrer, it is sufficient to say the rights which the
appellee is now asserting in this case were not in issue,
nor were they involved in that case." See also *Sauer* v.
*Schenck,* 159 Ind. 373, 64 N. E. 84.

As to what is settled by a former judgment in another
proceeding, Black, in his work on Judgments, Vol. 1
(2nd ed.), sec. 242, says: "Besides jurisdiction of the
person of the defendant and of the general subject mat-
ter of the action, it is necessary to the validity of a judg-
ment that the court should have had jurisdiction of the
precise question which its judgment assumes to decide,
or of the particular remedy or relief which it assumes
to grant. In other words, a judgment which passes upon
matters entirely outside the issue raised in the record
is so far invalid. Jurisdiction may be defined to be the
right to adjudicate concerning the subject matter in the
given case. To constitute this there are three essentials.

First, the court must have cognizance of the class of cases to which the one to be adjudged belongs.   Second, the proper parties must be present.  And third, the point decided must be, in substance and effect, within the issue.
. . . A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration.   And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment.   It is impossible to concede that because A and B are parties to a suit, a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not.   Persons, by becoming suitors, do not place themselves for all purposes under the control of the court, and it is only over those particular interests which they choose to draw in question that a power of judicial decision arises.

"A judgment upon a matter outside of the issue must of necessity be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard.   And it is upon this very ground, that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an effect to matters adjudicated.   And this is the principal reason why judgments become estoppels.

"On this principle, where a widow brought suit for the sole purpose of having dower assigned her in her deceased husband's lands, the heirs at law, who were infants, being made defendants, and the court not only directed an assignment of dower, but of its own accord decreed a sale of the residue of the land belonging to the heirs, it was held that the court, having exceeded its jurisdiction, the decree of sale was void, and open to collateral impeachment.   Again, where the issues in a suit in chancery are so framed as to present a controversy

between the complainant on the one side and the defendants on the other, the court should not go beyond the pleadings and decree relief as between the co-defendants; and though the language of the decree may be broad anough to embrace the decision of questions disputed by the defendants *inter sese,* yet it will be construed in the light of the pleadings, and restricted to the issues raised thereby. So again in an action to foreclose a mortgage on premises described in the complaint, a decree directing the sale of lands not mentioned in the pleadings is void, though the owner of such other lands was made a party.''

The same author, in Vol. 2, sec. 611, discussed matters brought into the controversy incidentally in the course of the litigation, says, that such matters are held not *res adjudicata.* 23 Cyc. pp. 1237 (sec. B), 1297, 1304-5, and *Pioneer Sav. Bk.* v. *Bartch,* 51 Minn. 474, 53 N. W. 764, 38 Am. St. Rep. at p. 514; *Jones* v. *Vest* 121 Ind. 140, 22 N. E. 882, 16 Am. St. Rep. 379.; *Graham* v. *LaCrosse,· &c. Ry. Co.,* 3 Wall. 704, 18 L. Ed. 251.

In the last cited case the opinion by Chase, C. J., recognizes that it is a common practice of courts of equity to decree between co-defendants upon proper proofs, and under pleadings which bring the respective claims and rights of such co-defendants between themselves under judicial cognizance, but the opinion further says that the court knew of no case, nor had it been referred to any, which asserted the doctrine that a court of equity may decree between defendants where neither pleadings nor proofs show any controversy or adverse interest between them.

''No conclusive effect can be given to a judgment which is absolutely void, whether its invalidity results from a want of jurisdiction over the parties, or over the subject matter of the controversy, or from a want of au-

thority in the court to go beyond the pleadings and evidence and render a judgment on a matter not in issue or not submitted to it." 23 Cyc., p. 1235.

In *Reynolds* v. *Stockton*, 43 N. J. Eq. 211, 10 Atl. 385, 3 Am. St. Rep. 307, which is a well considered case, it is held that the matter in controversy is that exclusively which is presented by the pleadings and the issue framed thereby; and that a decree which is entirely aside of the issue raised in the record is invalid, and will be treated as a nullity, even in a collateral proceeding. As in the case of *Seamster* v. *Blackstock, supra,* it is stated that a court may rightfully obtain jurisdiction, and its decrees may be void because in the progress of the case it has exceeded its jurisdiction, and that in such cases the decrees may be attacked directly or collaterally.

In an analogous case—*Lincoln Nat. Bk.* v. *Virgin,* 36 Neb. 735, 55 N. W. 218, 38 Am. St. Rep. 747—the opinion in part says: "We are, however, unable to perceive wherein a judgment entered by a court confessedly outside of the issues submitted for its determination can be said to rest upon any other or different principle than one in which the subject matter is entirely foreign to the jurisdiction conferred upon it. In the language of the Supreme Court of Ohio, in *Spoors* v. *Coen,* 44 Ohio St. 497, [9 N. E. 132] 'a judgment by a court of competent jurisdiction in a case before it, however erroneously that jurisdiction may have been exercised, is one thing, and a judgment by a court of like jurisdiction in a case not before it, is another and quite a different thing.' In *Sheldon* v. *Newton,* 3 Ohio St. 494, Judge Ranney uses this language: 'It is *coram judice* whenever a cause is presented that brings this power into action. But before the power can be affirmed to exist it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be

charged or affected; that such complaint has actually been preferred, etc. The distinction above noted is abundantly sustained by authority."

See also note to that case which says: "The defect in the decree relied on was that it extended entirely beyond any issue tendered by the complaint or other pleadings."

While it is the policy of the law to settle disputes between litigants once and for all, when brought before courts of competent jurisdiction, it is also the policy of the law to put every litigant on notice, by proper pleadings, of what he is called upon to meet; and when he has this notice, to give him a hearing to make defense thereto, but the courts in no jurisdiction, so far as this court is advised, have gone to the extent of holding that a party, infant or adult, is estopped to assert a right by reason of an adjudication in a proceeding to which he was never a party or a privy of a party litigant, and in which his rights in or to the subject matter of litigation were at no time put in issue and he given an opportunity to be heard in the assertion or defense of his rights.

The object of the bills of review tendered by appellant and asked to be filed in this cause was to obtain for him an opportunity to properly develop his case, introduce evidence and to defend his rights involved in the controversy—a privilege that was never extended to him in either the *Hockman case,* relied on by appellees as *res adjudicata,* nor in this; and, therefore, the question of fraud, so elaborately argued by counsel in this court should not, upon the record before us, be now considered.

We are of opinion that the decrees of the circuit court appealed from are erroneous, and they will be reversed and annulled, and the cause remanded for further proceedings therein not in conflict with the views herein expressed.

*Reversed.*