**AMERICAN FEDERATION OF TOBACCO-GROWERS, Inc., a Virginia Corporation, v. NEAL et al.**

**Civ. A. No. 234.**

United States District Court
W. D. Virginia, at Danville, Va.

Jan. 4, 1950.

George E. Allen, Richmond, Va., and Fowler & Dodson, Danville, Va., for plaintiff.

Garrett & Wheatley, Danville, Va., for defendants.

BARKSDALE, District Judge.

Plaintiff is a cooperative association of tobacco growers, incorporated under the laws of the State of Virginia, with its principal office at Chatham, Pittsylvania County, Virginia. The defendants now remaining in the suit are The Danville Tobacco Association, Inc., and the individual members of the Association, who are alleged to operate warehouses for the sale of leaf tobacco in the City of Danville. A hearing was had on September 13, 1949, upon the plaintiff's motion for a temporary restraining order or injunction, which motion was denied. On December 9, 1949, a hearing was had on plaintiff's motion for a summary judgment filed herein on November 28, 1949, and defendants' motion for summary judgment filed herein on November 29, 1949, both of said motions being based upon the pleadings herein filed and certain depositions taken by both parties. Findings of fact and conclusions of law are unnecessary under Rule 52, Federal Rules Civil Procedure, 28 U.S.C.A., on decisions of motions for summary judgment under Rule 56, Federal Rules Civil Procedure, but I do wish in this memorandum to state briefly the reasons for my decision on these motions.

There are continuous records of a tobacco market at Danville since 1869, and the market probably existed before that date. By Act of the Legislature in 1888, "for the purpose of encouraging, promoting and regulating the sale of leaf tobacco and trade therein in the town of Danville, Virginia," a charter was granted to certain named individuals "under the corporate name of The Danville Tobacco Association". This non-stock corporation, which is really a board of trade, has continued to function until the present time. It has adopted a constitution and by-laws for the regulation of the Danville tobacco market. The Board of Governors of the Bright Flue-Cured Tobacco Warehousemen's Association (not a party to this suit), annually, at a meeting in advance of the tobacco sales season, determines the rules and regulations for tobacco sales during the coming season. This Board of Governors fixes the periods during which auctions shall be conducted at the various markets, and the number of hours per day during which the auctions may take place. The tobacco companies which buy tobacco assign buyers to the respective markets in such numbers as they deem sufficient. Individual buyers operate on such markets as they see fit. Under the rules and regulations of The Danville Tobacco Association, all warehouses, all buying companies and all individuals who buy tobacco on the Danville market, are required to be

members of the Association and abide by its rules and regulations. For a full discussion of the auction system of marketing tobacco, see Townsend v. Yeomans, 301 U.S. 441, 57 S.Ct. 842, 81 L.Ed. 1210, and Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441.

By its charter, defendant, The Danville Tobacco Association, is only authorized to function "in the town (now city) of Danville", and it has always been considered that this constituted a limitation of warehouse membership to such warehouses as were located within the corporate limits.

During the year 1949, plaintiff built a warehouse for the auction sale of tobacco in Pittsylvania County, near the City of Danville, but outside of the corporate limits thereof. This warehouse is located in an area which the City of Danville is seeking to annex. An annexation suit is now pending in the State court, having been instituted during the early part of 1949. In the late Summer of 1949, plaintiff made an application to defendant, The Danville Tobacco Association, for membership and for an allotment of its selling time, or in the event that it was refused membership, for an allotment of selling time anyhow. By letter of August 22, 1949, defendant, The Danville Tobacco Association, declined both requests, for the reason that plaintiff's warehouse was located without the corporate limits of the City of Danville. Whereupon, on September 10, 1949, this action was instituted under the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq., and the Act in Regard to Discrimination Against Farmers Cooperative Associations by Boards of Trade, 15 U.S.C.A. §§ 431–433, plaintiff alleging that defendants' refusal to admit plaintiff to membership in the association was an illegal restraint of trade under the Sherman Act and also violative of the anti-discrimination act, and praying for injunctive relief and treble damages.

I might interpolate here that plaintiff's counsel in oral argument conceded that plaintiff must stand or fall on the Anti-Trust Act, because, unless the rule of defendant Danville Tobacco Association restricting warehouse membership to warehouses within the corporate limits of Danville was invalid under the Anti-Trust Act, the last mentioned Act would be of no benefit to plaintiff. Consequently, the decision of this case depends directly upon the question of whether or not the rule of the defendant association limiting its warehouse membership to warehouses located within the corporate limits of the City of Danville, is valid under the Anti-Trust Law.

It can hardly be doubted that even the requirement of defendant association that all warehouses conducting auction sales of tobacco on the Danville Market must be members of the Association subject to its rules and regulations, constitutes "restraint of trade" in the broadest sense of these words. It is conceded by defendants that the operation of tobacco warehouses is interstate commerce. It might be debatable whether or not the rule of defendant association limiting membership therein to warehouses located within the corporate limits of the City of Danville, is a restraint of trade *quoad* plaintiff. It is to be noted that defendants have never at any time taken the position that plaintiff may not operate its warehouse fully and freely, in competition with the Danville Tobacco market. Defendants do take the position that plaintiff's warehouse being located outside of the City of Danville, they are not required to admit it to membership in their Association and divide their selling time with plaintiff. However, for reasons which I shall presently state, I am of the opinion that my decision must be for defendants even though it be conceded that the rule limiting warehouse membership to warehouses within the corporate limits of the City of Danville constitutes a restraint of trade *quoad* plaintiff.

In oral argument, plaintiff's counsel took the position that *any* restraint of trade was illegal under the Sherman Act, and refrained from discussing whether or not the rule here under attack was reasonable or unreasonable. Plaintiff's counsel cited and relied upon the Northern Securities case, Northern Securities Co. v. United States, 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679. There are certainly expressions in

the majority opinion tending to sustain plaintiff's contention. One paragraph of the syllabus is as follows: "The Act is not limited to restraints of interstate and international trade or commerce that are unreasonable in their nature, but embraces all direct restraints, reasonable or unreasonable, imposed by any combination, conspiracy or monopoly upon such trade or commerce."

But even in that case, Mr. Justice Brewer, concurring, said 193 U.S. at page 361, 24 S.Ct. at page 466: "I think that in some respects the reasons given for the judgments cannot be sustained. Instead of holding that the anti-trust act included all contracts, reasonable or unreasonable, in restraint of interstate trade, the ruling should have been that the contracts there presented were unreasonable restraints of interstate trade, and as such within the scope of the act. That act, as appears from its title, was leveled at only 'unlawful restraints and monopolies.' Congress did not intend to reach and destroy those minor contracts in partial restraint of trade which the long course of decisions at common law had affirmed were reasonable and ought to be upheld. The purpose rather was to place a statutory prohibition, with prescribed penalties and remedies, upon those contracts which were in direct restraint of trade, unreasonable and against public policy. Whenever a departure from common-law rules and definitions is claimed, the purpose to make the departure should be clearly shown. * * *"

Whatever the rule of law deducible from the Northern Securities Company's case may be, I am satisfied that under more recent decisions of the Supreme Court, only unreasonable restraints fall within the ambit of the Act. In upholding restrictive regulations of the Chicago Board of Trade, Mr. Justice Brandeis said, Chicago Board of Trade v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683: " * * * The case was rested upon the bald proposition, that a rule or agreement by which men occupying positions of strength in any branch of trade, fixed prices at which they would buy or sell during an important part of the business day, is an illegal restraint of trade under the Anti-Trust law. But the legality of an agreement or regulation cannot be determined by so simple a test, as whether it restrains competition. Every agreement concerning trade, every regulation of trade, restrains. To bind, to restrain, is of their very essence. The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. * * *"

The recent case of Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013, makes it quite clear that only unreasonable restraints are made illegal by the Sherman Act. In the majority opinion, Mr. Justice Black said, 326 U.S. at page 14, 65 S.Ct. at page 1422: "Nor can we treat this case as though it merely involved a reporter's contract to deliver his news reports exclusively to a single newspaper, or an exclusive agreement as to news between two newspapers in different cities. For such trade restraints might well be 'reasonable', and therefore not in violation of the Sherman Act. Standard Oil Co. v. United States, 221 U.S. 1, 31 S. Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734."

Mr. Justice Douglas, concurring, said, 326 U.S. at page 23, 65 S.Ct. at page 1426: "Every exclusive arrangement in the business or commercial field may produce a restraint of trade. A manufacturer who has only one retail outlet for his product may be said to restrain trade in the sense that other retailers are prevented from dealing in the commodity. And to a degree, the same kind of restraint may be found wherever a reporter is gathering news exclusively for one newspaper. But Standard Oil Co. v. United States, 221 U. S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A., N.S., 834, Ann.Cas.1912D, 734, construed the Sherman Act to include not every restraint but only those which were unreasonable. * * *"

And Mr. Justice Frankfurter, concurring, said 326 U.S. at page 27, 65 S.Ct. at page 1428: "Indubitably, then, we have here arrangements whereby members of the As-

sociated Press bind one another from selling local news to non-members and exercise power, which reciprocal self-interest invokes, to help one another in keeping out competitors from membership in the Associated Press, with all the advantages that it brings to a newspaper. Since the Associated Press is an enterprise engaged in interstate commerce, Associated Press v. National Labor Relations Board, supra [301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953], these plainly are agreements in restraint of that commerce. But ever since the Sherman Law was saved from stifling literalness by 'the rule of reason', Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 518, 55 L.Ed. 619, 34 L.R.A., N.S., 834, Ann.Cas.1912D, 734; United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663; it is not sufficient to find a restraint. The decisive question is whether it is an unreasonable restraint. This depends, in essence, on the significance of the restraint in relation to a particular industry. Compare Chicago Board of Trade v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683."

I therefore hold that, even if it be conceded that defendant association's rule here under attack constitutes a restraint of trade *quoad* the plaintiff, the rule is nevertheless not invalid under the Sherman Act unless it be an "unreasonable restraint". I believe that, fairly considered, the facts demonstrate that the rule is not an unreasonable one.

No warehouse of the Danville Tobacco market has ever operated outside of the corporate limits. During the year 1949, four new warehouses have been erected within the corporate limits of the City of Danville, all of which were admitted as members of the Association and are presently in operation. Although the facts are not clear from the evidence, it seems that some years ago, probably in the twenties, a warehouse was leased to, and operated by, a cooperative association of growers in the City of Danville. By its charter, constitution and by-laws, defendant association has regulatory powers and power to punish by fine, suspension or expulsion, for violation of its regulations, and it would seem that some geographical limit to its jurisdiction would be necessary, and this limit has always been considered to be the corporate limits of the City of Danville.

Defendants aver that the rule of the Association limiting warehouse membership to warehouses located within the corporate limits of the City of Danville, is by no means arbitrary, but is based upon substantial reasons which would make it unfair for them to admit warehouses outside of the corporate limits to membership. Defendants first point out that one who erects a warehouse within the city limits is required to comply with the City Building Code, resulting in a building cost of approximately $2.00 per square foot of floor space, whereas, one who erects a warehouse outside the city limits in Pittsylvania County is not required to comply with any building code and can construct a warehouse at a cost of 80¢ per square foot or less.

Also, real estate values within the city are much higher than real estate values in the county. It appears from the evidence that plaintiff considered the purchase of a certain lot which was suitable for warehouse purposes within the corporate limits and was asked the price of $30,000.00 or more for the lot. Plaintiff declined to buy this lot, but another warehouse operator did purchase it and erected a warehouse thereon. Plaintiff acquired the land upon which it built its warehouse, for nothing, the owner thereof having donated the necessary land by reason of the expected enhancement in value of the residue of his property.

The assessment of real estate for taxation within the city of Danville is generally higher than the assessment of real estate in Pittsylvania County, and the rate of tax levy in the City is $2.25 per hundred dollars of assessed value, and the rate in Pittsylvania County is $2.00 per hundred dollars of assessed value. In addition, the City of Danville levies a license tax of 95 cents per hundred dollars upon the gross receipts of all warehouses located within the city, while the County of Pittsylvania levies no such tax at all.

The operators of each of the four new warehouses erected in 1949 would have preferred to erect and operate their warehouses outside of the corporate limits for the considerations indicated above, but nevertheless, erected their warehouses within the corporate limits because they were advised that their warehouses would not be admitted to membership in the Association unless they were located within the corporate limits. Plaintiff made no inquiry as to whether or not it would be admitted to membership until after it had built its warehouse. Although it is not definitely proven, the evidence strongly indicates that plaintiff's officers, in deciding to build their warehouse outside of the corporate limits, thought that their property would be annexed to the City of Danville and brought within the corporate limits prior to the opening of the 1949 tobacco selling season. Defendants' counsel has stated in open court that when, as and if the plaintiff warehouse is brought within the corporate limits by annexation, it will promptly be admitted as a member of the Association.

Again I call attention to the fact that defendants have never taken the position that plaintiff may not operate its warehouse as it sees fit. They only say to this plaintiff and all others that we will not admit you to membership in our association, divide our selling time with you, and extend to you all other privileges of our association unless you locate your warehouse within the corporate limits of the City of Danville and compete with us on equal terms. I cannot say, as a matter of law, that a rule carrying into effect this position is unfair, or that it constitutes an unreasonable restraint of trade. It seems to me that the converse is true, that is to say, that to require these defendants to admit plaintiff to membership in their association, with all its privileges, would subject them to competition which is obviously unfair. Accordingly, an order will be entered overruling plaintiff's motion for a summary judgment and granting the motion of defendants for summary judgment.