## Richmond

HAZEL PRICE BESHORE CIAROCHI v. ALBERT MICHAEL CIAROCHI.

December 1, 1952.

Record No. 3958.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Louis B. Fine* and *Howard I. Legum,* for the appellant.

No appearance for the appellee.

MILLER, J., delivered the opinion of the court.

In this suit instituted on the 14th day of August, 1950, appellant, Hazel Price Beshore Ciarochi, sought to have the marriage that she and appellee, Albert Michael Ciarochi, had entered into on the 6th day of February, 1950, declared null and void, but if that relief were not granted, she prayed for a divorce *a mensa et thoro.*

The trial court declined to grant a decree of annulment but did award appellant a divorce *a mensa et thoro* upon the ground of desertion. It is from that decree, which expressly refused to annul the marriage, that appellant sought and obtained this appeal. She now insists that upon the pleadings and proof presented, she was, and is, entitled to a decree declaring the marriage void because of alleged frauds practiced upon her by her husband before and at the time of the marriage.

Appellee was proceeded against by order of publication but made no appearance. The material part of the bill pertinent to the questions presented follows:

"(3) That the defendant fraudulently and with a scheme to deprive your complainant made love to her and subsequently she fell in love with the defendant; the defendant took the money which she had collected as a widow of a World War II veteran; and the defendant had no idea or intention of staying married to your complainant, but merely to take her money and property to the extent of Five Thousand Dollars ($5,000.00); and that the defendant wilfully deserted and abandoned your complainant in addition to his fraudulent scheme and premeditated plan on the 3rd day of July, 1950."

Appellant contends that the evidence establishes fraud in two respects, viz., (1) that at the time of the marriage, and unknown to her, appellee entertained a preconceived and fixed purpose to have no children, and (2) he married her for the sole purpose of obtaining her money. She insists that the proof incident to either of these frauds was sufficient upon which to award an annulment of the marriage.

■ The testimony bearing upon appellant's first contention, *i. e.*, that at the time of the marriage, and unknown to her, appellee entertained a preconceived and fixed purpose to have no children, need not be considered for no such charge is made in the bill of complaint.

Before any relief may be granted because of fraud, it must be clearly alleged.

■ "Where fraud is relied on, the bill must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defence accordingly, and since it must be clearly proved it must be distinctly stated." *Alsop* v. *Catlett*, 97 Va. 364, 370, 34 S. E. 48; *Welfley* v. *Shenandoah I., etc., Co.*, 83 Va. 768, 3 S. E. 376; *Dickenson* v. *Bankers' Loan, etc., Co.*, 93 Va. 498, 25 S. E. 548; *Jordan* v. *Liggan*, 95 Va. 616, 29 S. E. 330; 8 Michie's Jurisprudence, Fraud and Deceit, secs. 49 and 50, pp. 737 and 738.

■ Though appellee failed to answer the bill, yet under section 20-99, Code 1950, and Rule of Court 2:8, it could not be taken for confessed. Thus the necessity clearly to allege and prove the fraud relied upon was in no wise lessened by appellee's failure to appear and plead.

Without deciding that the marriage could or could not be annulled because of a fixed intent on the part of Ciarochi at the time of the marriage to have no children, we reject appellant's first contention because of her failure to allege that as a ground upon which she sought relief.

The evidence bearing upon appellant's charge that appellee married her solely to obtain her money and never intended to live with her permanently follows:

After appellant had testified to all necessary jurisdictional facts and said that she and appellee had, subsequent to their marriage, lived together at her apartment in Norfolk, Virginia, until July 3, 1950, she stated that at the time of her marriage, she was the widow of a veteran of World War II, and that her late husband had been killed in 1942 in combat on the U.S.S. Yorktown. As his widow she had received a monthly pension of $75.00 from the government until her marriage of February 6, 1950, at which time all payments were discontinued. She then testified that she had about $5000 which she had accumulated over the several years since 1942, and both before and subsequent to her marriage to appellee, he had prevailed upon her to

lend to him and expend upon and for him large sums of money; that she had at his instance at about the time of their marriage and at much expense established him in a restaurant business; that in that undertaking he had made a complete failure and between January 27, 1950, and July, 1950, about $2000 had been lost in the venture. It appears from her testimony that this restaurant was actually purchased in her name and the license taken out by her, but it was conducted by appellee. She also introduced in evidence her savings bank book, which, from April, 1943, to April, 1949, showed a regular course of saving and accumulation of funds amounting to $2672. The evidence does not disclose just when she met appellee, but from April 14, 1949, to March 30, 1950, that sum and an additional $500 deposited August 22, 1949, had been checked out. At the date of the marriage the deposit had been reduced to $1056.95. Appellant further stated that after all of the money which she had accumulated had been expended and lost, and she was without funds except for a very small monthly income that she receives from an insurance policy, appellee willfully deserted her. In short, she claims that both before and subsequent to their marriage, he was solely interested in her money and did not intend to live with her after her money had been exhausted.

Cora Madeline Kujawski, a sister of appellant, said that she had a conversation with appellee shortly before the marriage, which was as follows:

"A: Yes, sir, and he began telling me that he and my sister were figuring on getting married and of course I carried on a conversation with him, so finally he come around and said he would like to go into the restaurant business and asked me how much money my sister had. He understood she had quite a bit. I told him I didn't know, I had never pried into her personal affairs. I asked him why he wanted to know and he said well just for reasons of his own. * * * "

This witness also said that about a month after the marriage she learned that appellee was losing money in the restaurant business and asked him what he was going to do if he didn't "get any more business than you have now." In reply he said, "Well when all the money was gone he could blow."

Appellant's niece, Edith Mildred Davidson, testified that appellee didn't support his wife, and after he had depleted her funds, he then left her.

Appellant's desire to obtain an annulment, in preference to a divorce, is understandable, for we were informed in argument at bar that if an annulment is awarded to her, the pension from the United States government will be re-instated. But that circumstance can in no wise aid or supplement the testimony, and it is the sufficiency of the evidence that we must consider.

Appellant relies upon the two cases of *Sheridan* v. *Sheridan,* 186 N. Y. S. 470, and *Thurber* v. *Thurber,* 186 Misc. 1022, 63 N. Y. S. (2d) 401, in which marriages were annuled upon grounds somewhat similar to the fraud set out in this bill.

In the *Sheridan Case* it was proved that the husband never intended to consummate the marriage and did not, for the parties never cohabited. It was also there shown that "defendant's interest in plaintiff was only for what money he could obtain from her," and she would not have married him had she known that such was his purpose.

In the *Thurber Case* the court found that the defendant had married her husband, who was in the service, solely for the purpose of obtaining the allotment allowed by the government to a soldier's wife, and having obtained that, she refused to live with him after he had returned from overseas. The court said "her conduct shows clearly that she married for the allotment and had no intention of living permanently with the plaintiff. This is a good ground for an annulment. * * * Marrying a soldier solely for the purpose of getting an allotment and more if the soldier is killed * * * is the most brazen kind of a fraud and is a good ground for the annulment of the marriage."

Here, however, the alleged fraud is not proved. The testimony does show that appellee was interested in appellant's financial status and that he did, both prior and subsequent to the mariage, prevail upon her to expend her money upon him. Yet it also shows that they lived together for several months, and he desired to and did enter into a business and did not leave until that venture wholly failed.

Without deciding whether or not the character of fraud alleged in appellant's bill would entitle her to the relief prayed for had it been clearly proved, we conclude that the evidence fails to establish the fraud charged and the proof is definitely insufficient upon which to grant an annulment of the marriage.

The decree of the chancellor is affirmed and the cause remanded to the trial court for such further proceedings therein as may be authorized by law. *Affirmed and remanded.*