# Richmond

CLINTON A. FOWLER AND T. RYLAND DODSON v. AMERICAN
FEDERATION OF TOBACCO GROWERS, INCORPORATED.

March 15, 1954.

Record No. 4173.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith and
Whittle, JJ.

The opinion states the case.

*Langhorne Jones* and *Charles R. Warren, Jr.*, for the plaintiffs in error.

*Eugene C. Hurt, Jr.* and *W. Carrington Thompson*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

On July 23, 1951, American Federation of Tobacco Growers, Inc., hereinafter at times called Federation or appellee, instituted an action against Clinton A. Fowler and T. Ryland Dodson, partners, engaged in the practice of law under the name of Fowler and Dodson. The motion for judgment alleged that due to the mistakes and because of the negligence and inattention of Fowler and Dodson, appellee had been induced to over-pay them the sum of $7,500 for legal services, had been required to expend $1,000 in court costs and incidental expenses, and had suffered additional damage of $2,500. Judgment for these sums, aggregating $11,000, with interest, was sought.

Verdict in favor of Federation for $6,250 was returned by the jury, and from the judgment entered thereon Fowler and Dodson obtained an appeal.

The two defendants in the trial court will hereinafter be referred to by their firm name or as appellants.

A plea of *res judicata* was interposed by appellants to the motion for judgment, and all matters of law and fact arising thereon were submitted to the court for determination. By an order of September 16, 1952, the plea was overruled. Upon trial of the case appellants' motion to strike interposed at the conclusion of the evidence and their motion to set aside the verdict were overruled and judgment entered on the verdict.

The court's ruling upon the plea of *res judicata* is assigned as error. Appellants also assert that the evidence is insufficient to support the verdict and judgment, and that instruction No. 1 was erroneous and prejudicial. These assignments of error require that the facts appearing in several exhibits attached to the plea, considered by the court when the plea was overruled, be stated and make it necessary that evidence on which the verdict was based be set out.

The plea of *res judicata* alleged that the matters now in controversy had been finally adjudicated between appellee and appellants in the cause styled *American Federation of Tobacco Growers, Inc., Clinton A. Fowler and T. Ryland Dodson* v. *George E. Allen* (186 F. (2d) 590), lately pending in the United States District Court for the Western District of Virginia and in the United States Court of Appeals for the Fourth Circuit. Specifically, appellants alleged that an intervening petition had been filed by George E. Allen in the United States District Court against American Federation of Tobacco Growers, Inc., Clinton A. Fowler and T. Ryland Dodson in the suit styled *American Federation of Tobacco Growers, Inc.* v. *Neal, et al.*, (89 F. Supp. 12, 183 F. (2d) 869), then pending in the District Court. It is then asserted that in his petition Allen, who had been associate counsel with Fowler and Dodson for American Federation of Tobacco Growers, Inc., in its suit against Neal and others, sought recovery of $7,500 from American Federation of Tobacco Growers, Inc., and Fowler and Dodson. It is further alleged that the federal courts determined that Federation was liable to Allen for $6,250,

and that the sum so adjudged due to Allen was part of the $11,000 sought to be recovered by appellee in this cause. In the plea it is in substance finally asserted that the federal District Court, by rendering judgment in favor of Allen against Federation and not against Fowler and Dodson, had necessarily foreclosed and rendered *res judicata* any claims that Federation might have had against Fowler and Dodson for all damages sustained and for all fees, costs or expenses incurred incident to the litigation in the federal courts.

In a brief memorandum opinion rendered by the court when the plea was overruled, it is said:

"In the George E. Allen Case or as a result of the Allen petition the judgment of the District Court merely adjudicated the right of Allen to recover his portion of the Attorney fee and left unadjudicated the rights of Fowler and Dodson and American Federation of Tobacco Growers as between themselves.

"In addition it is difficult to conceive how the issue or issues raised by the pleadings in the case at bar could have been adjudicated in the Allen Case because Fowler and Dodson and American Federation of Tobacco Growers, etc., were on the same side—there was no controversy between them—a complete lack of adversity. * * * "

The exhibits attached to the plea consisted of Allen's petition against Fowler and Dodson and American Federation of Tobacco Growers, Inc., the defendants' answers, the court's findings of fact and conclusions of law, and the orders and adjudications entered and made in that cause.

It appears from these exhibits that George E. Allen had been employed by Federation at the suggestion of its general counsel, Fowler and Dodson, and that he and appellants had acted as counsel for Federation in the protracted litigation styled *American Federation of Tobacco Growers, Inc.* v. *Neal, et al.*, which had originally been instituted in the federal District Court and taken on appeal to the United States Court of Appeals. After the cause had been successfully prosecuted through the latter court, it was settled by

the payment of $57,000 to Federation by defendants in that cause, and a fee of $15,000 was paid to Fowler and Dodson out of the $57,000. The settlement and payment of fee were made without Allen's knowledge. Upon being apprised of these facts, he insisted that under his contract of employment and his understanding with Fowler and Dodson, he was entitled to one-half of the $15,000, subject to a credit of $1,250 already paid to him as part of a retainer fee. When his demands were denied, he filed his petition in the federal District Court and sought recovery of one-half of the $15,000 from Fowler and Dodson and American Federation of Tobacco Growers, Inc., either or both. He prayed "that the defendants named in this petition, or the one which may be responsible for petitioner's share in the attorney's fee already paid" be required to pay him such amount as fairly represented his share of the attorney's fee or pay into court such sum as might be necessary to satisfy his claim.

Fowler and Dodson and Federation were represented by the same attorney, R. Paul Sanford, but they filed separate answers. Appellants admitted that the litigation in which Allen had been associate counsel with them had been settled, but alleged that the fee paid to them had been for their services in that litigation and "for their services as general counsel" over a period of time. Federation admitted that Allen had been employed to assist Fowler and Dodson in the litigation, but asserted that he had been paid $1,250 and was due only the further sum of $1,250 which it offered to pay.

It thus appears from these pleadings that no issue was made or suggested by Fowler and Dodson or Federation as between themselves, the co-defendants, as to who would or might be responsible to Allen should he establish the allegations of his petition.

The federal courts determined and adjudicated that Federation pay to Allen the sum of $7,500 (subject to the credit of $1,250 already paid) and costs. In the final order

which recited that the $6,250 had been paid to Allen by Federation, the court decreed: " * * * that this cause be, and the same is, hereby dismissed, but this order is without prejudice to the rights, if any of the American Federation of Tobacco-Growers, Incorporated, against Clinton A. Fowler and T. Ryland Dodson."

"The general rule is that parties to a judgment are not bound by it in subsequent controversies between each other, where they are not adversaries in the action in which the judgment is rendered. This is true whether the judgment is rendered in favor of the plaintiff, or determines the issues in favor of the defendants. The rule applies to a fact which might have been, but was not, litigated in the original action. The theory of the many decisions supporting the general rule is that the judgment merely adjudicates the rights of the plantiff as against each defendant, and leaves unadjudicated the rights of the defendants as among themselves. It is also a general rule that a plaintiff is not concluded by the result of a litigation between two defendants in an action concerning a matter upon which plaintiff's complaint tendered no issue." 30 Am. Jur., Judgments, sec. 233, p. 966. *Merton* v. *Puffer*, 157 Wisc. 576, 147 N. W. 993; *Linkous, etc.* v. *Stevens, et al.*, 116 Va. 898, 83 S. E. 417; *Harris, et al.* v. *Sparrow*, 146 Va. 747, 132 S. E. 694; *Town of Purcellville* v. *Potts, et al.*, 179 Va. 514, 19 S. E. (2d) 700; *Winborne* v. *Doyle*, 190 Va. 867, 59 S. E. (2d) 90.

It is made plain from the exhibits attached to the plea of *res judicata* that Fowler and Dodson and Federation, defendants to Allen's petition in the federal courts never assumed any adversary position as between themselves. Throughout that litigation they sat cheek by jowl and stood shoulder to shoulder, making joint effort and common cause to defeat Allen's claim. No issue was ever sought to be made or presented to the court by them or any of them as to rights or liabilities as between themselves. It is equally clear that no adjudication of any liability that might exist as

between those defendants involving the matter here in controversy was made by the federal courts. The plea of *res judicata* was properly overruled.

We now take up the contention that the evidence is insufficient to support the verdict.

In 1948 Federation was organized and chartered as a Virginia corporation. Its chief objects were to engage in marketing flue-cured tobacco, primarily at auction, and to operate a warehouse for that purpose in or near the city of Danville, Virginia. A. E. Griffith was president of the company, and E. T. Moorefield, Jr., became its secretary.

For Federation to market and auction tobacco, it was not only necessary that it secure a warehouse, but it had to have tobacco buyers assigned to it. The Danville Tobacco Association (hereinafter called Association) controlled the assignment and distribution of tobacco buyers in the Danville area, and membership in that association was necessary because buyers were available only to its members.

During April of 1949 the corporation engaged the firm of Fowler and Dodson as its general counsel, and they served as such until their services were formally dispensed with in March, 1951. When appellants were employed, they, along with officers of the corporation negotiated with Association to admit Federation as one of its members. The corporation also acquired land and employed a contractor to erect a warehouse near Danville, and the legal work incident to these undertakings was handled by appellants. Shortly before the opening of the tobacco market in September, 1949, Federation was notified that it would not be admitted to membership in Association. Thus its efforts to secure buyers and auction tobacco during the 1949 season were unsuccessful. Because of this denial of membership in the Association and to recover damages allegedly caused thereby, Federation instituted suit in the United States District Court against that corporation and its members. In this suit styled *American Federation of Tobacco Growers, Inc.* v. *Neal, et al.*, Federation sought injunctive relief, treble dam-

ages and attorney's fees as provided for in the Sherman Anti-Trust Act, and the Federal Cooperative Marketing Act. However, on September 12, 1949, its motion for a temporary injunction was denied. It was at this stage of the proceeding that Fowler and Dodson suggested to Federation that George E. Allen, an experienced and capable attorney of Richmond, Virginia, be retained to assist them in the litigation. This suggestion was agreeable to Federation, and appellants communicated with Allen by mail and received a reply from him dated October 1, 1949, which reads in part as follows:

" * * * I am willing to come into the case in association with you gentlemen, and give the case the very best attention of which I am capable, if the plaintiff is willing to pay me a retaining fee, upon my entry in the case and pay me a reasonable fee at the end of the litigation, subject to a credit of the amount of the retaining fee. Of course, in fixing upon a final fee, I will not do so without consulting with you and the officers of the plaintiff corporation."

On October 4, 1949, the president and secretary of Federation and appellants called on Allen in Richmond, Virginia, and his services were engaged. In the testimony given by Allen it appears that he fully discussed the terms of his employment with appellants and the corporation's officers. He then, in their presence, dictated, and, after it had been reduced to writing, signed and delivered the following receipt and memorandum to A. E. Griffith:

"Received of American Federation of Tobacco Growers, Incorporated, the sum of Twelve Hundred and Fifty Dollars ($1250.00), being one-half (½) of retaining fee in the case of American Federation of Tobacco Growers, Incorporated, v. Danville Tobacco Association, Incorporated. The other one-half (½) of the retaining fee to be paid within sixty (60) days. It is understood that no further fees will be demanded until the said litigation is concluded, and then a reasonable fee for my entire services will be fixed upon after consultation with officers of the American

Federation of Tobacco Growers, Incorporated, and their local counsel in Danville."

After an adverse decision in Federation's suit against Neal and others, an appeal was taken, which was successful, and the United States Court of Appeals remanded the cause with directions to award injunctive relief, and for the assessment of damages and ascertainment of attorney's fees to be paid by Association and others to Federation and its counsel. Pending final determination of those matters, telephone conversations were had by Allen with appellants, and he talked with one of Association's attorneys relative to settlement of the case. Yet on August 19, 1950, Fowler and Dodson, without advising Allen, settled the suit for $57,000 and received $15,000 as attorney's fees. Upon learning of this settlement, Allen demanded one-half of the attorney's fees which were paid appellants out of the $57,000 settlement. That was refused, and he thereupon filed his petition in the cause against Fowler and Dodson and Federation, and it was later adjudged that he recover $6,250 and costs from Federation.

A. E. Griffith testified that when it was determined by the United States Court of Appeals that Federation was entitled to injunctive relief, damages and counsel fees in its suit against Neal and others, he was told by Clinton A. Fowler that the fees to which counsel would be entitled, would be fixed by the court and that sometime thereafter when the settlement was made, Fowler phoned him and said, "I have gotten a settlement of $57,000, $42,000 for damages and $15,000 for attorney's fees."

When testifying about the understanding he had with Fowler as to distribution of the $15,000 attorney's fees, he said:

"Q. In this settlement, Mr. Griffith, whom did you expect to disburse the attorneys fees?

"A. I expected Mr. Fowler to disburse them because he had asked for the privilege to settle it and threatened to get out of the case if he wasn't allowed to settle it.

"Q. Was that disbursement supposed to take care of Mr. Allen or not?

"A. Supposed to take care of all attorneys fees. That was all we had gotten for attorneys fees."

Testimony given by him when cross-examined on this phase of the case is as follows:

"Q. And at that time you paid Mr. Fowler and Mr. Dodson $15,000.00 on behalf of your corporation, didn't you?

"A. We paid them $15,000.00 attorneys' fees.

"Q. Now, Mr. Griffith, I want you to tell this jury what that attorney's fee was for.

"A. The attorney's fee was for all legal services in this anti-trust case.

"Q. For nothing else?

"A. That was our understanding. That was what it was collected for. That is what Mr. Fowler told me when he called me on the telephone and said he had $15,000.00 attorneys' fees and $42,000.00 damages. What they had in mind I don't know. I just know what I had in mind."

\* \* \* \* \* \* \*

"Q So all during the compromise negotiations you understood Fowler and Dodson were going to get $15,000.00?

"A. Absolutely—not Fowler and Dodson but attorneys' fees.

"Q. Now you are changing it again. Which was it?

"A. It was attorneys' fees. Mr. Fowler told me that Mr. Allen, immediately after Mr. Allen came back from Asheville, told him he considered $15,000.00 was what they ought to ask for. Mr. Dodson got books and pointed out cases to me where $15,000.00 was a proper fee for them to ask."

\* \* \* \* \* \* \*

"Q. After this litigation started between Mr. Allen and yourself and Mr. Dodson and Mr. Fowler when was the

first time you ever raised any kind of question that you ought not to have to pay any attorneys' fee?

"A. That question was raised when I first found out Mr. Allen wasn't satisfied or wasn't going to get his money.

"Q. Did you raise the question with your attorney, Mr. Paul Sanford?

"A. Raised the question when Mr. Fowler and Mr. Dodson and Mr. Moorefield, I believe, discussed it, raised the question and that is when Mr. Moorefield wanted Mr. Dodson to go to Richmond and see Mr. Allen. Mr. Fowler objected and said, 'Let us settle it and it won't cost you a cent.' "

\*     \*     \*     \*     \*     \*     \*

"Q. Did you feel or were you under the belief that this $15,000.00 covered Mr. Allen's fee?

"A. I told Mr. Fowler when he asked for permission to settle it—I said, 'You want to be sure and settle with Mr. Allen too because we don't want any hereafter about this thing,' and he told me that Mr. Allen had already told them to go ahead and settle it, and well—we were just confident everything was arranged between them and Mr. Allen because of our relationship and we went ahead and settled with them confident everything would be all right."

This witness stated that as general counsel appellants performed only some minor services for the corporation over a period of time other than those rendered in the litigation in the federal courts.

Clinton A. Fowler and T. Ryland Dodson admitted receipt of Allen's letter of October 1st and that they conferred with him at his office on October 4th. Fowler also said that he "either saw the receipt or heard Mr. Allen dictate it in his office," and after Allen's petition had been filed, he advised Federation what his "construction of that receipt" was. That construction was that Allen was only entitled to a retainer fee of $2,500, but he says that the corporation's officers also thought from their conversation with Allen in

Richmond that Allen was only entitled to receive the $1,250 balance on his retainer fee. Both appellants also testified that the $15,000 paid to them was not only for their services in the litigation in the federal courts, but half of it was to cover extensive and valuable services rendered the corporation as general counsel over a period of time.

E. T. Moorefield, Jr., who had terminated his connection with Federation was called as a witness by appellants. His testimony was to the effect that he was under the impression that $2,500 was all that Allen was to receive and that the $15,000 was allowed to appellants for services in the litigation and as general counsel, but he did not undertake to give any detailed account of the services they had rendered outside of the litigation against Association and others. He, however, expressed the thought that $2,500 would be adequate compensation for their services as general counsel, and $7,500 was a fair fee for *all* of their services. And when asked, "Did your corporation have anything to do with attorneys fees, who got it or where it went?", he answered, "No, sir."

R. Paul Sanford testified that Dodson asked him to represent appellants and Federation in defending Allen's claim, and some time later Griffith and Moorefield came to his office and he agreed to represent the corporation, as well as Fowler and Dodson. He said that the corporation's officers first contended that Federation owed Allen only the balance of $1,250, and agreed that "Fowler and Dodson got $7,500 out of this $15,000 for their services in connection with this anti-trust case," and that the other $7,500 was for other services, and that Griffith testified to that effect in defending Allen's claim. However, when the court awarded judgment for $6,250 against Federation, Griffith and Moorefield indicated that "they thought Fowler and Dodson ought to pay either all of this fee that Allen was getting or a part of it. * * * "

The evidence was conflicting, and Griffith gave some testimony that is contradictory of some given in defense of

Allen's claim. Yet those contradictions and inconsistencies were matters for the jury's consideration. The letter of October 1st, written by Allen to appellants, and the receipt of October 4th clearly showed that he was entitled to compensation in excess of $2,500 if Federation substantially prevailed in its suit in which he was associate counsel. It is thus evident that the jury could have concluded that Fowler and Dodson were inattentive and negligent when the contract was made with Allen and in the advice that they gave Federation's officers as to the legal effect of the letter and receipt, and that Fowler had induced Federation to settle its litigation for $57,000 under the belief and assurance that the $15,000 fee would cover all fees incident to that litigation.

The evidence is sufficient to sustain the verdict and judgment.

The instruction complained of by appellants reads as follows:

"The Court instructs the jury that any attorney by virtue of his relationship to his client is under certain obligations to the client which he is bound to perform with fidelity or [and] with reasonable care and skill. If he fails in the performance of these duties he may become personally liable to his client for the loss resulting from his action. You are, therefore, told that if you believe by a greater weight of the evidence in this case—and the burden of proof is upon the plaintiff—that Fowler and Dodson failed to exercise reasonable care, skill and diligence in advising their client the American Federation of Tobacco Growers in the preparation of and as to the effect of their contract of employment with George E. Allen, attorney, dated October 4, 1949, then Fowler and Dodson were guilty of negligence and are liable for the resulting damages, if any, sustained by their Client the American Federation of Tobacco Growers."

This instruction fairly states the obligation, duty and care that is owed by an attorney to his client. *Glenn* v. *Haynes*, 192 Va. 574, 66 S. E. (2d) 509; 5 Am. Jur., Attorneys at Law, sec. 120, p. 331; 7 C. J. S., Attorney and Client, sec.

140, p. 977. But appellants contend that the instruction is erroneous because it told the jury that they were liable to Federation if they failed to exercise reasonable care, skill and diligence in advising Federation "in the preparation of and as to the effect of their contract of employment with George E. Allen, * * * ." They say that there was no duty on them to advise appellee of the legal effect of the contract when it was made, and complained that the instruction allows recovery against them for lack of care as of the time when the contract was entered into.

Appellants were general counsel for the corporation and were present with the corporation's officers for the purpose of consulting with Allen incident to his employment. The terms of the contract were discussed with Griffith and Moorefield in appellants' presence, and one of appellants heard it dictated or saw it after it had been typed. Yet as general counsel they sat silent when they either knew that a contract was being executed by their client which they did not understand, or they ultimately gave their client a construction of the instrument which was obviously unjustified. In either event they failed to exercise the reasonable care, skill and diligence that they owed to their client.

The judgment is affirmed.

*Affirmed.*