## Richmond

JUAN ORTIZ

V.

RONALD E. BARRETT

June 12, 1981.

Record No. 790726.

Present: All the Justices.

*William D. Cremins (Michael J. Valentine; Hazel, Beckhorn and Hanes,* on briefs), for appellant.
*Robert C. Coleburn (Benjamin Margolin,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Juan Ortiz filed this malpractice action in the trial court seeking to recover damages alleged to have been caused by the negligence of the late Edward P. Barrett, an attorney not licensed to practice in Virginia, and Ronald E. Barrett, a Virginia attorney associated with him in handling certain personal injury litigation. At the conclusion of the plaintiff's evidence in a jury trial, in which the administrator of Edward's estate was a party defendant but did not participate, the trial court struck the evidence as to Ronald and entered summary judgment in his favor. The trial

court further ruled that Edward had been negligent as a matter of law, submitted the case to the jury for a determination of damages, and entered judgment upon the jury verdict for Ortiz against Edward's estate in the amount of $75,000.

In Ortiz's appeal, the question raised is whether the trial court erred in striking his evidence as to Ronald. Resolution of this question, however, requires us to consider the duties, responsibilities, and potential liability of an attorney who is employed as local counsel by another attorney to perform specified legal services.

On April 29, 1973, Ortiz was injured when an automobile operated by Carlos Alva in which he was riding as a guest passenger collided in Prince William County with a vehicle operated by Charles E. Brown. Three other guest passengers in the Alva car, Aurea Gayoso, Maria Bustios, and Theresa Teran, were also injured in the accident. All four employed Edward P. Barrett, a member of the District of Columbia Bar, to represent them in their personal injury claims, and the attorney entered into settlement negotiations with the insurance carriers for the two drivers.

On April 28, 1975, the last day before the action would have been barred by the statute of limitations, Edward prepared and filed against Alva and Brown in the trial court a motion for judgment in which he joined as plaintiffs the four passengers in the Alva car. Edward signed not only his own name but also Ronald's name and address on the motion for judgment.

Ronald, who was called as an adverse witness by Ortiz, had an office in Alexandria. He was not related to Edward and had never met him, although he had once seen him in the offices of Chaiken and Karp, a District of Columbia law firm, where Edward shared office space. Chaiken and Karp had employed Ronald as local counsel in Virginia in several law cases.

Ronald testified that in late April or early May of 1975 he received a telephone call from Edward inquiring whether he would serve as local counsel in a personal injury case that Edward was handling. When Ronald agreed, Edward said that he had a problem with the statute of limitations and requested permission to sign Ronald's name to the initial pleadings. Ronald declined but suggested that Edward bring the motion for judgment to him so that he could review it, ascertain whether it conformed to Virginia requirements, and, after making any necessary revisions, sign it prior to filing. Edward then acknowledged that the statute of limitations had already run at that time, and that he had "taken the

liberty" of signing Ronald's name to the motion for judgment and timely filing it. Ronald protested this unauthorized signing of his name but requested that he be furnished a copy of the pleading to examine.

By letter dated May 19, 1975, Edward forwarded a copy of the motion for judgment to Ronald. In the letter, Edward informed Ronald that he did not expect any further activity in the case, that the usual fee arrangement that Ronald had with Chaiken and Karp would apply, and that Ronald was to serve "as co-counsel without active participation in the case."

Ronald testified that he saw that the motion for judgment was defective because it contained a misjoinder of the causes of action of all four passengers in the Alva car. He telephoned Edward, reported the problem, and suggested that Edward concern himself about it and take appropriate action. Edward replied that Ronald should not worry about the defect because the case would soon be settled. Ronald did not then or thereafter act to have his unauthorized signature removed from the motion for judgment. Under Ronald's usual fee arrangement with Chaiken and Karp he received $100 for serving in a case as Virginia co-counsel; he billed Edward in this amount by statement dated May 27, 1975.

Counsel for defendant Brown timely filed a Motion to Dismiss all parties plaintiff in the motion for judgment except the first named, Aurea Gayoso, on the ground of misjoinder. He also filed an Answer and Grounds of Defense. Responsive pleadings, however, were not timely filed on behalf of defendant Alva. On September 12, 1975, counsel for Alva filed a Motion to Dismiss the action because of misjoinder, or in the alternative to dismiss three of the four parties plaintiff, and an Answer and Interrogatories. On October 22, 1975, on motion of Alva's counsel, the trial court entered an order, endorsed "Seen And Agreed" by Edward and Ronald, granting an extension of time for filing responsive pleadings on behalf of Alva. Ronald testified that Edward and counsel for Alva had agreed to the extension of time, that he himself had nothing to do with that decision, that he was not asked to meet with the clients to assist in the preparation of answers to the Interrogatories, and that he never met them prior to Edward's death. Nor did he investigate the automobile accident or interview witnesses.

Ronald talked several times with Edward about the misjoinder of parties plaintiff and the advisability of taking action to solve

the problem. On the last occasion when the matter was discussed, Edward gave further assurances that his negotiations were progressing and he expected the litigation to be settled shortly thereafter.

In November, 1975, at Edward's request, Ronald researched the misjoinder question and, relying upon Code § 8-96,[1] filed a Motion for Leave to Amend the motion for judgment by severing the four claims and permitting the plaintiffs to proceed under separate and independent pleadings. With Edward's permission Ronald signed his name and Edward's to this motion and on January 7, 1976, at Edward's request, he alone appeared for the plaintiffs and argued the motion in the trial court. By letter dated January 20, 1976, the trial judge advised counsel that he was of opinion that he had no authority under Code § 8-96 to sever the claims, that the Motions to Dismiss would be granted as to three of the plaintiffs, and that plaintiffs' counsel should decide which plaintiff would remain in the case.

Ronald testified that he informed Edward that in his opinion the judge's ruling was incorrect and should be appealed, but Edward decided that it was not necessary or advisable to do so, and Edward alone made the decision to select Theresa Teran as the plaintiff to remain in the case. The order entered June 1, 1976, pursuant to the judge's ruling of January 20, 1976, recited that at the January 7, 1976, hearing a request was made to consider the Motion to Dismiss as a Motion to Abate, that the Motion to Dismiss, considered as a Motion to Abate, was sustained, and that "by agreement of parties" all plaintiffs except Theresa Teran were dismissed. Without objection, this order was endorsed by Edward and counsel for Brown and Alva; it was not endorsed by Ronald. Edward did not file a Notice of Appeal.

Throughout their association, Ronald said, he and Edward never met in person. Edward died in August, 1976, after a protracted illness, and Roger Greenberg, an attorney in the firm of Chaiken and Karp, received the Teran file from Edward's office and conducted the case to a final conclusion, with Ronald continu-

---

[1] Code § 8-96 (Repl. Vol. 1957) provides in pertinent part:

No action or suit shall abate or be defeated by the nonjoinder or misjoinder of parties, plaintiff or defendant, but whenever such misjoinder or nonjoinder shall be made to appear by affidavit or otherwise, new parties may be added and parties misjoined may be dropped by order of the court at any stage of the cause as the ends of justice may require . . . .

ing in his former capacity as Virginia counsel. Greenberg negotiated a compromise settlement, received a fee of $1,500, and paid Ronald a fee of $750 for services which had required of him more than 15 hours at $50 per hour. The fee included the $100 charge billed to Edward when Ronald was initially employed.

In the present case, in order to establish the liability of Edward for his negligence in carrying out his professional responsibilities to Ortiz it was necessary to determine the amount, if any, to which Ortiz would have been entitled in his aborted action against Brown and Alva. Accordingly, evidence was adduced as to the automobile accident, the actions of the two drivers involved, and the nature and extent of Ortiz's injuries. The trial court submitted the issues of the liability of the respective drivers to the jury under instructions defining the standard of care required of each.[2] The court further instructed the jury that Edward was negligent in his professional responsibilities to Ortiz and the jury should return a verdict in favor of Ortiz against Edward for such sum, if any, as it might deem appropriate under other instructions. Pursuant to these instructions, the verdict in favor of Ortiz against Edward was returned.

Ortiz first argues that by striking the evidence as to Ronald the trial court was applying a lesser standard of care to a local counsel than the standard applied to the foreign attorney who employed him. The record, however, does not support this argument.

Every attorney in this state is liable to his client for damages caused by his negligence. Code § 54-46. *See also* Code § 26-5. The law implies a promise that the attorney will exercise a reasonable degree of care, skill, and dispatch in carrying out the business for which he is employed. *See Fowler* v. *Tobacco Growers, Inc.,* 195 Va. 770, 782, 80 S.E.2d 554, 561 (1954); *Glenn* v. *Haynes,* 192 Va. 574, 581, 66 S.E.2d 509, 512-13 (1951). The same standard of reasonable care applies to all attorneys in the performance of their professional duties, but the contractual obligations will, of course, vary widely from client to client and case to case.

In the present case, Edward was employed by Ortiz and the other three clients under contingent fee agreements to handle

---

[2] Ortiz was required to prove gross negligence on the part of his driver, Alva, ordinary negligence on the part of Brown. The "gross negligence" rule then applicable in guest-passenger cases has since been eliminated. Acts, 1977, c. 617, p. 1063; Code § 8.01-63 (Repl. Vol. 1977).

their personal injury claims arising from the automobile accident that occurred in Virginia. Edward negotiated unsuccessfully with the insurance carriers in an effort to settle the claims. On the day before the actions would have been barred by the statute of limitations, he filed a defective motion for judgment in Virginia on behalf of his clients, and signed Ronald's name to the pleading in order to bring himself into compliance with Code § 54-42[3] and Rule 1A:4.[4] As an attorney licensed in the District of Columbia but not in Virginia, Edward was privileged to have access to one of our courts, even for the limited purpose of filing a pleading, only in association with a lawyer licensed to practice and practicing in Virginia.

Neither the statute nor Rule 1A:4, however, requires the alteration of the contractual arrangement between a foreign attorney and his client so that local counsel in Virginia will replace the foreign attorney as chief or lead counsel for the client. The purpose of the Rule is to facilitate the efficient administration of court business by permitting a court to deal exclusively with local counsel, upon whom all notices and processes may be served. It is necessary that our courts have access to attorneys of record who are personally subject to their supervisory control rather than risk delays in communicating with foreign attorneys who may be inaccessible, uncooperative, or unfamiliar with the rules and statutes governing the trial of cases in Virginia.

---

[3] Code § 54-42 provides in pertinent part:

The following persons may practice law in this State:

\* \* \*

Any person duly authorized and practicing as counsel or attorney-at-law in any state . . . or in the District of Columbia, may for the purpose of attending to any case he may occasionally have in association with a practicing lawyer of this State practice in the courts of this State . . . .

[4] Rule 1A:4 provides as follows:

An attorney from another jurisdiction may be permitted to appear in and conduct a particular case in association with a member of the Virginia State Bar, if like courtesy or privilege is extended to members of the Virginia State Bar in such other jurisdiction. The court in which such case is pending shall have full authority to deal with the resident counsel alone in all matters connected with the litigation. If it becomes necessary to serve notice or process in the case upon counsel, any notice or process served upon the associate resident counsel shall be as valid as if personally served upon the nonresident attorney.

Except where a party conducts his own case no notice or pleading required to be signed by counsel shall be accepted or filed by the clerk of any court of record unless such pleading or notice is signed by a member of the Virginia State Bar.

■ Ronald testified that Edward was in complete control of the litigation now in controversy and made all the significant decisions. The record supports the trial court's conclusion that by specifying that he would conduct the case "without active participation" by Ronald, Edward employed Ronald merely as a means of gaining access to the Virginia court. For a nominal fee, Ronald agreed to review the pleadings, make necessary revisions, and serve as local counsel within the jurisdiction of the court. Edward expected to settle the cases before trial and he obviously intended to employ the services of Ronald on as limited a basis as possible. Edward contracted with the clients to provide the desired professional services; his authority under the contract was broad enough for him to employ local counsel, and he employed Ronald. The terms of the employment, as Ronald understood them, were that Edward remained in exclusive control of the case and that, after reviewing the pleadings and providing Edward access to the trial court, Ronald was to perform only such additional services, on an hourly basis, as Edward directed.

Ronald owed the duty to Edward of exercising reasonable care, skill, and diligence in performing the tasks for which Edward employed him. He also had an implied obligation to the clients, with whom he had no direct contact or understanding, to exercise the same degree of care in performing such professional services as their agent, Edward, required of him. The mere absence of an express contract between Ronald and the clients would not enable Ronald to avoid liability to them for damages caused by his negligence in the discharge of his assigned duties. Therefore, the services performed by Ronald are to be measured by the same standard applicable to Edward's services, but the services themselves differed, and Ronald's duty was limited to the work assigned to him by Edward.

■ The most important duty assigned to Ronald was to research the misjoinder problem and take whatever corrective action was available. Ortiz contends that Ronald was negligent in performing this assignment because the statute of limitations was tolled as to all four claims upon the filing of the original motion for judgment; that separate suits could have been timely filed thereafter; and that Ronald owed a duty to recommend that procedure. We do not agree. Under the statute then in effect[5] the

---

[5] Code § 8-34 (Repl. Vol. 1957) provides:

filing of a motion for judgment subsequently dismissed because of the misjoinder of parties or causes of action was not one of the four events that would toll the running of the statute of limitations. *See Jones* v. *Morris Plan Bank,* 170 Va. 88, 92-93, 195 S.E. 525, 526 (1938).

▇ Ortiz attacks Ronald's action in endorsing the order that permitted Alva to file responsive pleadings after he was in default. The record, however, shows that the extension was granted pursuant to agreement between Edward and Alva's attorney, and that Ronald had no part in the decision.

▇ Ortiz challenges Ronald's failure to insist that the Motions to Dismiss not be treated as pleas in abatement, and his failure to research adequately and object to the pleas as not being verified as required by Code § 8-98, and not timely filed as required by Rule 3:6, then in effect, prohibiting the filing of a plea in abatement more than 21 days after service of notice of the motion for judgment. The delay in filing was waived by Edward. As to the unverified pleas in abatement, they were not filed as such, and there is no reason to believe that if objection had been made, they would not have been promptly verified and received by the court.

▇ Ronald, relying upon Code § 8-96, attempted to cure the misjoinder by Motion to Amend to permit the severing of the four actions. When the trial court ruled against him, he recommended an appeal, but was overruled by Edward. There is no merit to Ortiz's contention that Ronald, nevertheless, should have appealed or at least filed a notice of appeal on his own initiative to preserve the clients' rights. In the face of Edward's objection, such action not only would have exceeded Ronald's delegated authority but would have been a usurpation of lead counsel's prerogatives.

---

If an action or suit commenced within due time in the name of or against one or more plaintiffs or defendants abate as to one of them by the return of no inhabitant or by his or her death or marriage, or if in an action or suit commenced within due time judgment or decree for the plaintiff shall be arrested or reversed upon a ground which does not preclude a new action or suit for the same cause, or if there be occasion to bring a new action or suit by reason of the loss or destruction of any of the papers or records in a former suit or action which was in due time; in every such case, notwithstanding the expiration of the time within which a new action or suit must otherwise have been brought, the same may be brought within one year after such abatement, or such arrest, or reversal of judgment or decree, or such loss or destruction, but not after.

■ Ortiz says that Ronald was negligent in not advising the clients of the risks involved, the conflict of interest arising from the trial judge's requirement that one plaintiff be selected to remain in the case, and the concessions permitting Alva's counsel to file responsive pleadings late. The record fails to support this contention. Edward was employed by the clients, and he made the controlling decisions in the litigation. Ronald never met any of the clients and had no contact with them. Edward was solely responsible for the selection of Teran as the plaintiff to remain in the case. The propriety of Ronald's failure to remove himself when the conflict of interest arose is irrelevant in this case. By the time Ronald learned of the conflict, the crucial decision had been made by Edward.

■ We reject Ortiz's argument that, by not disavowing the unauthorized action of Edward in signing his name to the motion for judgment, Ronald ratified the defective pleading and became liable as if he had prepared it. Although Edward signed Ronald's name without authority, Ronald, in not acting to have his signature expunged, violated no duty owed to Edward or his clients. Indeed, if Ronald had disavowed his signature, he would have left Edward and his clients in the vulnerable position of being in direct violation of Rule 1A:4 after the statute of limitations had run.

■ The trial court concluded that, as to the misjoinder question, the earlier ruling made by another judge of that court, became the law of the case. Contrary to Ronald's recommendation, the unfavorable ruling was never appealed, and the trial court correctly declined to reopen the issue after it had been conclusively resolved. Therefore, as the trial court also ruled, the misjoinder was fatal to Ortiz's action. Edward's initial negligence occurred before Ronald was ever employed. Edward's rejection of Ronald's recommendation that the unfavorable ruling on the misjoinder be appealed effectively terminated the causes of action of three plaintiffs, and Edward alone selected the plaintiff whose case remained viable.

■ We find no error in the ruling of the trial court limiting the testimony of Robert T. Hall, an attorney who testified as an expert witness for Ortiz. The court excluded testimony proffered by Hall on certain legal questions, which were properly reserved for determination by the court, and on certain facts that were not supported by the record. The witness was permitted to testify as to the respective responsibilities of foreign and local counsel. Con-

ceding that the function of local counsel would vary depending upon the agreement he had with the foreign attorney who employed him, Hall qualified his concession by stating that local counsel could not with propriety ignore the interests of the clients, even if he did not know them. We agree with that statement, but we conclude from the record that Ronald, rather than ignoring the interests of the clients, exerted himself in their behalf to the extent the constraints of his contractual authority permitted him to do so.

 Ortiz's contention that Edward and Ronald were joint venturers in the litigation is untenable. A joint venture is established by contract, express or implied, where two or more persons jointly undertake a specific business enterprise for profit, with each to share in the profits or losses and each to have a voice in the control and management. *Smith, Adm'r* v. *Grenadier,* 203 Va. 740, 744, 127 S.E.2d 107, 110 (1962). Here, the record shows that, under his contract with Edward, Ronald's compensation was not contingent upon the successful outcome of the litigation; there was no agreement to share in the profits or losses, and control and management were vested in Edward. Ronald was employed by Edward to perform limited services for a fixed fee regardless of results.

 At trial, Ortiz proffered DR5-107(B),[6] one of the Disciplinary Rules set forth in Part Six II of the Rules, to impeach the testimony of Ronald that Edward's letter of May 19, 1975, defined his duties as local counsel. The trial court, over Ortiz's objection, ruled that the proffered evidence was inadmissible. We agree with this ruling. This Disciplinary Rule is intended to prevent a non-lawyer from improperly influencing the professional judgment of a lawyer. It has no application to the relationship between one lawyer and another. In any case where two or more attorneys perform legal services for the same client in one case or legal transaction, there may be differences of opinion as to the appropriate actions to be taken. Each lawyer may attempt to persuade the others to his view, but the final decision of lead counsel

---

[6] DR5-107 Avoiding Influence by Others Than the Client.

\* \* \*

(B) A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services.

will not bring those who accede to the decision into violation of DR5-107(B).

■ Finally, we hold that any error of the trial court in permitting Ronald's attorney to ask him leading questions was harmless. The questions to which Ortiz objected at trial related to such matters as whether the employment agreement provided for Ronald's compensation on an hourly basis, thereby reflecting the amount of work performed. The testimony was uncontradicted and the witness merely restated in somewhat different form facts that had already been established. Ortiz was not prejudiced by the leading questions.

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*

THOMPSON, J, dissenting.

The initial letter of employment from Edward to Ronald dated May 19, 1975, said:

> For your file is enclosed a copy of the initial pleading in the above-refernced [sic] matter. *I do not expect any further activity in the case, but will keep you advised.*
> As we discussed, the arrangement on this matter at this time will be the usual arrangement with Chaikin & Karp for your service *as co-counsel without active participation in the case.* [Emphasis added.]

Edward's anticipation about further activities was erroneous. When the motions to dismiss for misjoinder were filed, Ronald went into action.

The majority opinion says: "The most important duty assigned to Ronald was to research the misjoinder problem and take whatever corrective action was available." Ronald then undertook to research the legal issue, prepared a motion to amend the original motion for judgment so that separate causes of action could be severed, and argued the matter without Edward before the trial court on January 7, 1976.

The trial court did not agree with the position of Ronald, and by letter opinion dated January 20, 1976, and addressed only to Ronald as plaintiffs' counsel, the court advised Ronald of its rul-

ing. This ruling was formalized by the order entered June 1, 1976, over four months after the letter opinion. Contained within that order was the following statement: *"[A]nd by agreement of the parties,* all plaintiffs, with exception of Theresa Teran, are hereby dismissed as parties plaintiff to this action." (Emphasis added.) Edward endorsed the order, but Ronald did not. The statement as to the agreement of parties is false.

Edward died in August 1976, and thereafter Ronald alone, on October 15, 1976, prepared answers to interrogatories for Theresa Teran and delivered them to opposing counsel. On October 26, 1976, Ronald alone prepared and submitted interrogatories to each defendant and was personally present with the foreign attorney, who succeeded Edward, for the discovery deposition of Teran on November 16, 1976. I do not think it is fair to the clients to allow Ronald to escape liability for this tragic situation by shifting the blame to his co-counsel. He participated actively in the case and received one-half of the fee. Ronald contends that he is absolved of liability because he wanted to appeal and was overruled by Edward. I do not think he can evade responsibility so easily.

The vital issues were the misjoinder ruling and its consequences. If Ronald and Edward disagreed as to an appeal from the misjoinder ruling, then the disagreement should have been submitted to the clients for a decision. If only one plaintiff was going to be permitted to continue, and three were going to be thrown out of the litigation, that election could not be made without joint consultation of the four plaintiffs and the two attorneys.

The proper standard is set forth in Rule 6:II:EC 5-12 which states:

> Inability of co-counsel to agree on a matter vital to the representation of their client requires that their disagreement be submitted by them jointly to their client for his resolution, and the decision of the client shall control the action to be taken.

The failure to follow this procedure in the instant case was flagrant and inexcusable and could constitute actionable negligence. To that extent I dissent from the majority conclusion.