**MACAWBER ENGINEERING, INC. Appellant,**

v.

**ROBSON & MILLER; Morton S. Robson; Kenneth N. Miller, Defendants,**

**Abdo & Abdo, P.A.; Steven R. Hedges, Appellees.**

**No. 94–2003.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1994.

Decided Jan. 31, 1995.

254

Jonathan M. Bye, Minneapolis, MN, argued (J. Michael Dady and Ann K. Grossman, on the brief), for appellant.

Lewis A. Remele, Jr., Minneapolis, MN, argued, for appellees.

Before BEAM, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge

BEAM, Circuit Judge.

Macawber Engineering, Inc. ("Macawber") appeals a district court order granting summary judgment in favor of Abdo & Abdo, P.A. ("Abdo") and Steven R. Hedges, a member of the firm. Macawber contends that Abdo and Hedges committed legal malpractice while acting as Macawber's local defense counsel. Specifically, Macawber alleges that as a result of local counsel's negligence, Macawber failed to respond to certain requests for admissions and incurred a $650,000 judgment. Because there is no evidence that local counsel had a duty to respond to the requests for admissions, we affirm.

## I. BACKGROUND

Macawber's legal malpractice claims arose from litigation with Red Rock of Minnesota, Inc. ("Red Rock"). In 1989, Macawber agreed to sell certain industrial equipment to Red Rock. After a dispute involving the installation and operation of the equipment, Red Rock sued Macawber in federal district court in Minnesota alleging breach of war-

---

* THE HONORABLE DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

ranty. Macawber retained Robson & Miller, a New York law firm, to defend the suit. Robson & Miller arranged for Steven Hedges of Abdo to serve as local counsel. Macawber confirmed the retention by letter and paid Abdo a $1,500 "retainer fee."

Abdo's involvement with the case was limited. From August 29, 1990, through February 4, 1991, Hedges recorded less than ten billable hours of work related to the Red Rock litigation. Hedges filed a petition for admission *pro hac vice* on behalf of Morton Robson of Robson & Miller and performed small tasks involving the pleadings and discovery. From February 4, 1991, to October 22, 1991, no one from Abdo was actively involved in the litigation.

On May 23, 1991, Red Rock served Robson & Miller with a set of 130 requests for admissions. The requests were not served on Hedges or anyone else at Abdo. Robson & Miller did not respond to the requests and, in August 1991, Red Rock moved for summary judgment based on the admissions. This motion was not served on Abdo. Hedges first learned of the requests for admissions and the pending summary judgment motion on October 22, 1991. On that date, the court called Hedges to ask whether Macawber would be filing a response to the summary judgment motion. Hedges immediately called Morton Robson and was informed that Robson & Miller had prepared responses to the motion and would handle the matter.

A few days later, Robson appeared on behalf of Macawber at a hearing on Red Rock's summary judgment motion. After the hearing, the district court deemed the requests for admissions admitted and granted partial summary judgment in favor of Red Rock for $582,392, the purchase price of the equipment. Macawber subsequently confessed judgment to consequential damages of $67,608.

Macawber then filed this diversity action against Robson & Miller, Morton Robson, Kenneth Miller, Abdo, and Stephen Hedges, contending that the defendants' failure to respond to the requests for admissions con-

stituted legal malpractice. Abdo and Hedges moved for summary judgment. The district court[1] granted the motion upon a finding that the affidavit of Macawber's expert failed to present evidence of the applicable standard of care for a reasonable attorney acting as local counsel.

In support of a subsequent motion for reconsideration, Macawber submitted a supplemental affidavit purporting to supply evidence of the applicable standard of care. The district court denied the motion for reconsideration, but granted Macawber's alternative motion for the entry of final judgment as to Abdo and Hedges. *See* Fed.R.Civ.P. 54(b). Macawber now appeals the order of dismissal.

## II. DISCUSSION

 We review the entry of summary judgment de novo. The judgment is to be affirmed if, viewing the evidence in the light most favorable to Macawber, there is no genuine issue as to any material fact and Abdo and Hedges are entitled to judgment as a matter of law. *See Adkison v. G.D. Searle & Co.,* 971 F.2d 132, 134 (8th Cir. 1992). The district court's interpretation of Minnesota law is subject to de novo review. *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1245 (8th Cir.1991).

To prevail in a legal malpractice action under Minnesota law, Macawber must prove:

(a) the existence of an attorney-client relationship; (b) acts amounting to negligence or breach of contract; (c) that such acts were the proximate cause of the plaintiff's damages; and (d) that but for defendant's conduct, the plaintiff would have been successful in the action.

*Rouse v. Dunkley & Bennett, P.A.,* 520 N.W.2d 406, 408 (Minn.1994). The district court found that Macawber failed to raise a jury question as to the second required element. As noted above, the court found that Macawber's expert failed to present evidence of the standard of care applicable to local

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

counsel.[2] We agree that the second element of Macawber's claim is deficient, but need not address the applicable standard of care. Macawber's claim fails because the negligent conduct alleged by Macawber falls outside the scope of Macawber's attorney-client relationship with Abdo.

■ Our conclusion in this regard is based on the relationship between the first and second elements in Minnesota's legal malpractice scheme. The first element requires the existence of an attorney-client relationship. The second element requires conduct constituting negligence or breach of contract. Where, as here, the alleged negligence or breach involves a failure to act,[3] there can be no negligence or breach absent a duty to act. An attorney's duty to act arises from the attorney-client relationship. Therefore, the extent of this duty necessarily depends on the scope of the attorney-client relationship. See Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 8.2 (1989). In other words, an attorney's duty is defined and limited by the scope of the overall attorney-client relationship. See Spannaus v. Larkin, Hoffman, Daly, and Lindgren, Ltd., 368 N.W.2d 395, 398 (Minn.Ct.App.1985) (holding that summary judgment on the client's malpractice claim was proper where the matter at issue fell outside the scope of the attorney-client relationship).

■ Under Minnesota law, an attorney-client relationship is established when the parties enter an express or implied contract of representation or when an individual seeks and receives legal advice under circumstances which would lead a reasonable person to rely on the advice. TJD Dissolution Corp. v. Savoie Supply Co., 460 N.W.2d 59, 62 (Minn.Ct.App.1990). It follows, therefore, that the terms of the representation agreement and the nature of the legal advice sought and received define the scope of the relationship.

■ In this case, the undisputed evidence indicates that the scope of the attorney-client relationship between Macawber and Abdo was limited. Macawber's retention letter to Hedges provides, "[W]e confirm our appointment of your firm as our local counsel in support of litigating attorneys, Robson & Miller, in the above stated case." Appellant's App. at 63. In his deposition, Macawber's CEO testified that he relied on Robson & Miller to handle the Red Rock litigation and to direct the activities of local counsel. Appellees' App. at 36. By affidavit, Morton Robson and Kenneth Miller testified that Abdo's role was limited and that Abdo's at-

2. Specifically, the district court held,
 The affidavit offered by Plaintiff does not detail the standard of care applicable to local counsel. It merely includes conclusory statements that the local counsel should have taken various actions. At no point does the expert address what a reasonable attorney in the community who was acting as local counsel would have done in this case.
 Macawber Eng'g Inc. v. Robson & Miller, No. CV-3-92-556, 1994 WL 763880, mem. op. at 7 (D.Minn. Jan. 28, 1994).

3. Through the affidavit of its expert, Macawber contends that Abdo acted negligently in failing to do the following:
 a. if Abdo & Abdo intended to somehow limit the scope of its representation, when it did not consult with Macawber concerning any such limitation and did not document any such limitation;
 b. when it did not inquire concerning the status of the case or in any other way participate in the preparation of the case between February 5, 1991 and October 22, 1991;
 c. when, upon receiving an inquiry from the court concerning whether Macawber in-

tended to file papers in opposition to a motion for summary judgment which involved the failure of Macawber to respond to requests for admissions, Abdo & Abdo did not contact Macawber and did nothing to inquire or to participate in the preparation of the case other than to make one call to Robson & Miller;
 d. when, upon being informed by an attorney for a potential source of financing to Macawber that it appeared that Robson & Miller had failed to carry out its professional duties, Abdo & Abdo did not further advise Macawber concerning possible claims against Robson & Miller but instead informed Mr. Robson that it "would not undertake the primary responsibility to do anything without talking to him first"; and
 e. when Abdo & Abdo did nothing after November 8, 1991 to participate in the preparation of the case although it never withdrew from representing Macawber.
Appellant's Addendum at 14–15 (affidavit of Jeffrey Keyes). For the purposes of this appeal, we do not consider the supplemental affidavit submitted by Macawber. See infra note 4.

torneys did everything asked of them. *Id.* at 42–46.

Macawber has offered no evidence that anyone involved in the Red Rock litigation asked or expected Abdo to do more than it did or that Abdo ever expressly or impliedly agreed to do more. Nor has Macawber offered evidence that it sought or received any legal advice from Abdo which would expand the scope of their relationship. Rather, it is undisputed that Macawber relied on Robson & Miller to direct Abdo's activities in the Red Rock litigation. The resulting attorney-client relationship between Macawber and Abdo was limited in scope and did not encompass a duty to monitor the discovery process and ensure responses to the requests for admissions.

Macawber contends that Abdo's role as local counsel carried with it some inherent duty to monitor Robson & Miller's handling of the requests for admissions. As evidence of this duty, Macawber points to the local court rules and the affidavit of its expert. Neither persuades us that Abdo had a duty to act under the circumstances.

■ The local court rule referred to is a District of Minnesota rule which requires that nonresident attorneys associate with a member of the Minnesota bar prior to appearing in any action or proceedings before the court. D.Minn. LR 83.5(d) (formerly Rule 1(D)). Under the rule, local counsel must "participate in the preparation and trial of the case or presentation of the matter involved...." *Id.* The proper interpretation of this language is a question of law. On appeal, we defer to the district court's interpretation of its own rules. *See Morgan Distribut. Co. v. Unidynamic Corp.*, 868 F.2d 992, 996 (8th Cir.1989). As interpreted by the district court, the rule does not require local counsel to take the actions that Macawber alleges Abdo and Hedges should have taken. *See Macawber Eng'g, Inc. v. Robson & Miller*, No. CV–3–92–556, 1994 WL 763880, mem. op. at 6 (D.Minn. Jan. 28, 1994).

■ The affidavit of Macawber's expert simply assumes that Abdo and Hedges had a duty to act. In the affidavit, the expert asserts that a reasonable attorney would have taken certain actions under the circumstances.[4] In the absence of a duty to act, these assertions are irrelevant. "An expert cannot create a duty by testifying to the existence of a standard of care where no underlying duty exists." Mallen & Smith, *supra,* § 27.16 at 678. Local counsel does not automatically incur a duty of care with regard to the entire litigation. When the client vests lead counsel with primary responsibility for the litigation, the duty of local counsel is limited. *See Ortiz v. Barrett*, 222 Va. 118, 278 S.E.2d 833, 838 (1981) (finding that local counsel's duty was limited to the work assigned to him by lead counsel).

Were the law otherwise, the costs involved in retaining local counsel would increase substantially. Confronted with a duty to monitor lead counsel's handling of the litigation, local counsel would be bound to review all manner of litigation documents and ensure compliance with all deadlines.[5] Out-of-state

---

**4.** In reviewing the district court's grant of summary judgment, we consider only the first affidavit of Macawber's expert. Macawber contends that we should also consider the supplemental affidavit it submitted in support of its motion for reconsideration. This position is without merit. A trial court has wide discretion in determining whether to consider additional evidence after a motion for summary judgment has been granted. *See Love v. Commerce Bank*, 37 F.3d 1295, 1296 (8th Cir.1994); *Mackin v. City of Boston*, 969 F.2d 1273, 1279 (1st Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1043, 122 L.Ed.2d 352 (1993). That discretion is not altered by the fact that the grant of summary judgment was subject to revision prior to the court's express direction for entry of judgment. *See* Fed.R.Civ.P. 54(b). The district court clearly acted within its discretion in denying the motion for reconsideration

and we will not consider evidence that the district court did not. Even if we considered the supplemental affidavit, it would not change our opinion in this case. As set forth above, Macawber's expert cannot create a duty by testifying to the existence of a standard of care.

**5.** This duty would be burdensome. To effectively monitor lead counsel's handling of the litigation, local counsel would have to insist on receiving service of all litigation documents, review the documents, and monitor lead counsel's progress toward meeting deadlines. Simply checking with the court on a regular basis would not be enough. Discovery documents are not routinely filed with the court, so local counsel would not learn of a failure to respond to request for admissions (as occurred in this case). Likewise, it

litigants would be forced to pay a local attorney to review lead counsel's work. Given the skyrocketing costs of litigation, the duplication of effort and increased fees that would result from such a rule foster problematic public policy. Though some litigants may choose to enter a representation agreement which includes extensive duties for local counsel, Minnesota law does not (and should not) require them to do so.

## III. CONCLUSION

Based on the scope of the attorney-client relationship between the parties, Abdo had no duty to monitor lead counsel's handling of Red Rock's requests for admissions. Thus, Abdo's failure to act cannot constitute legal malpractice and Macawber's claim must fail. The order of the district court granting summary judgment in favor of Abdo and Stephen Hedges and dismissing all claims against them is hereby affirmed.

would not be sufficient to check with lead counsel. Such an inquiry will usually result in a reply from lead counsel that everything is under control (as it did in this case). Lead counsel is not likely to disclose that it has been negligent.