COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Raphael and Senior Judge Annunziata
Argued at Fairfax, Virginia

PUBLISHED

IAN WESLEY BENNETT

v.        Record No. 0364-24-4

KATERINA LUNDH

OPINION BY
JUDGE STUART A. RAPHAEL
JUNE 17, 2025

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Phillip B. Leiser (The Leiser Law Firm, on briefs), for appellant.

Rachael L. Loughlin (Charles M. Sims; Monica J. Malouf; O'Hagan
Meyer, PLLC, on brief), for appellee.


Virginia has long required that a defamation plaintiff plead the exact words alleged to be

defamatory.  The trial court here sustained a demurrer and dismissed Ian Wesley Bennett's

defamation claim against his former colleague, Katerina Lundh, for failing to satisfy that

requirement.  Bennett claims that the dismissal was premature because he should have been

allowed to conduct discovery to determine Lundh's exact words.  But a key purpose of the

exact-words requirement is to allow a defendant to challenge the legal validity of a defamation

claim on demurrer.  Because Bennett failed to plead the exact words after being ordered to file a

bill of particulars, the trial court properly sustained the demurrer and dismissed the complaint

with prejudice.

BACKGROUND

On appeal "from the grant of a demurrer, we accept as true all factual allegations

expressly pleaded in the complaint and interpret those allegations in the light most favorable to

the plaintiff." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 613 (2019) (quoting *Coward*

*v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). The plaintiff "may rely upon inferences . . . but only 'to the extent that they are *reasonable.*'" *Id.* (quoting *Coward*, 295 Va. at 358). "Distinguishing between reasonable and unreasonable inferences is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "[W]e do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences." *Id.* at 623 (quoting *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 371 (2018)).

Bennett's defamation claim against Lundh stems from a work-related trip to San Francisco in August 2022. The complaint describes an after-dinner incident in which Lundh was allegedly inebriated and bumped into Bennett. Bennett "[p]layfully" nudged her, and Lundh responded with a "hard slap" across his face. Lundh then put her arm around Bennett "as if to apologize." Bennett commented on Lundh's history of trauma, prompting her to slap him again.

An hour later, Bennett saw Lundh at a bar with several mutual colleagues. One colleague shouted at Bennett, accusing him of grabbing Lundh. The colleague said she would report Bennett and would not travel with him again. It was that colleague's "statement that was contained in the disciplinary allegations that led to Bennett's removal" from the federal government contract on which they were working.

Two weeks later, Bennett was counseled at work and "cautioned about 'drinking to excess' on business trips." Bennett surmised that Lundh was responsible for spreading "rumors" about him, noting that she was "somewhat cagey about who was saying what and to whom." A week later, Bennett's supervisor told him not to come to work the next day. Bennett learned from "other colleagues" that he would be removed from the contract because of his "misdeeds" during the San Francisco trip. Bennett was then removed from the contract on the ground that he had been "physically and psychologically harassing a colleague in his office." The complaint

quotes a disciplinary notice that does not mention Lundh by name but refers to various alleged interactions she had with Bennett. It said, for instance, that Bennett "'predatorily' walked her to her car," "created a toxic work environment," and was "drinking in excess and behaving erratically in public, in front of his colleagues."

Bennett's complaint alleged that, "[u]pon information and belief, Lundh published false and defamatory statements of and concerning Bennett" and "Lundh's defamatory statements were read and/or heard by one or more third parties, and therefore published, in Fairfax County." Bennett concluded that Lundh had defamed him because, "[u]pon information and belief, although the roughly half dozen individuals who participated in the San Francisco trip witnessed at least the first slap, none of them was situated such that they could witness what had transpired between Bennett and Lundh immediately preceding those slaps." Thus, "any knowledge or information any of them had . . . must have been related to them by Lundh." Bennett alleges that his company terminated his employment "as a result of the conclusions reached concerning his conduct in relation to Lundh." He sought $500,000 in compensatory damages and $350,000 in punitive damages.

The trial court granted Lundh's motion for a bill of particulars, ordering Bennett within 21 days to set forth "(i) the statements on which his claim is based, *in haec verba*; (ii) the speaker of each statement; (iii) the date of each publication of each statement; and (iv) to whom each publication of each statement was made."[1] When Bennett failed to file a bill of particulars, Lundh demurred to the complaint for failing to plead the defamatory statements "*in haec verba*"

---

[1] Professor Garner has criticized using the phrase "in haec verba" as "the worst sort of puffed-up LATINISM for an ordinary idea—*verbatim* invariably being a good substitute." *In haec verba*, *Garner's Dictionary of Modern Legal Usage* 455 (3d ed. 1995). We use the clunkier Latinism only when quoting other sources.

and for failing to file the bill of particulars as ordered. The trial court sustained the demurrer and dismissed the complaint with prejudice. Bennett noted a timely appeal.

ANALYSIS

We review de novo whether a trial court properly sustained a demurrer to a plaintiff's defamation complaint. *Schaecher v. Bouffault*, 290 Va. 83, 91 (2015). A demurrer tests whether the complaint sets forth "a cause of action upon which relief can be given." *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012). "In deciding whether to sustain a demurrer, the sole question . . . is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against a defendant." *Pendleton v. Newsome*, 290 Va. 162, 171 (2015). "But we are not bound by the pleader's conclusions of law that are couched as facts." *Theologis v. Weiler*, 76 Va. App. 596, 600 (2023).

To state a claim for defamation, "a plaintiff must show: '(1) publication of (2) an actionable statement with (3) the requisite intent.'" *Nestler v. Scarabelli*, 77 Va. App. 440, 453 (2023) (quoting *Jordan v. Kollman*, 269 Va. 569, 575 (2005)). The plaintiff must show that the defendant "published, with malintent, a false statement containing defamatory sting" and may not rely on "mere conclusory allegations." *Id.* at 455.

In addition, Virginia has long imposed a heightened-pleading requirement for defamation claims. "[G]ood pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading must go further, that is, it must purport to give the exact words." *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 134 (2003) (quoting *Fed. Land Bank v. Birchfield*, 173 Va. 200, 215 (1939)). Our Supreme Court identified that requirement more than 150 years ago, finding the rule "well established that the words themselves must be set out." *Hansbrough v. Stinnett*, 66 Va. (25 Gratt.) 495, 498 (1874) (citing 4 Conway Robinson, *Practice in Courts of Justice in England and the United States* 688 (1860)).

When *Hansbrough* was decided, the heightened-pleading requirement was deeply rooted

in English common law, which generally continues to provide the rule of decision in Virginia

until altered by the General Assembly.[2]  Lord Ellenborough noted the "unanimous" opinion of

ten judges in a 1710 impeachment trial in the House of Lords for the proposition that "by the law

of England and constant practice, . . . the particular words . . . ought to be expressly specified."

*Cook v. Cox*, 3 M. & S. 110, 116, 105 Eng. Rep. 552, 554 (K.B. 1814) (Ellenborough, L.)

(quoting *Dr. Sacheverell's case*, 5 State Trials 828 (1710)).[3]  This rule was expressed by other

English jurists in different ways, but the common thread required the plaintiff to plead the

specific words attributed to the defendant:

- "the original words," *Zenobis v. Axtell*, 6 T.R. 162, 163, 101 Eng. Rep. 489, 490 (K.B. 1795) (Kenyon, C.J.);

- "the very words themselves used, and not merely the effect of them," *Maitland v. Goldney*, 2 East 426, 438, 102 Eng. Rep. 431, 436 (K.B. 1802) (LeBlanc, J.);

- "the words of the libel itself," *Flint v. Pike*, 4 B. & C. 473, 483, 107 Eng. Rep. 1136, 1140 (K.B. 1825) (Littledale, J.); and

- "the words . . . should be set forth precisely," *Gutsole v. Mathers*, 1 M. & W. 495, 502, 150 Eng. Rep. 530, 532 (Ex. 1836) (Abinger, C.B.).

That rule was restated in various English and American law treatises, including

Robinson's 1860 treatise cited in *Hansbrough*, 66 Va. (25 Gratt.) at 498, and Burks's 1934

treatise cited in *Birchfield*, 173 Va. at 215.[4]  Although some States have eliminated the

---

[2] *See* Code § 1-200 ("The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly.").

[3] *See* 15 *A Complete Collection of State Trials and Proceedings for High Treason and Other Crimes and Misdemeanors* 466-67 (T.B. Howell, ed. 1812) (reporting the judges' colloquy in *Dr. Sacheverell's case*).

[4] *See* Martin P. Burks, *Pleading and Practice in Actions at Common Law* § 167, at 265 (3d ed. 1934) ("In declaring for either libel or slander, the exact words (written or spoken) must be set out in the declaration *in haec verba*."); John Townshend, *Treatise on the Wrongs Called*

heightened-pleading requirement when modernizing their pleading rules, others—like Virginia—

have retained it.  *See generally* Am. Jur. 2d, *Libel and Slander* § 414, at 832 (2017).[5]

English courts identified at least two reasons for this heightened-pleading requirement.[6]

First, it allowed the court to determine on demurrer "whether [the words] constitute a ground of

---

*Slander and Libel, and on the Remedy by Civil Action for Those Wrongs, to Which Is Added in This Edition a Chapter on Malicious Prosecution* § 329, at 573 (3d ed. 1877) ("The complaint should set out, and purport to set out, the very words published."); Henry Coleman Folkard, *Starkie's Treatise on the Law of Slander and Libel: Including the Pleading and Evidence, Civil and Criminal* 343 (3d ed. 1869) ("Generally the very words used should be set out; for it has frequently been held that it is not sufficient to describe them by their sense or meaning, substance, purport, or effect."); Robinson, *supra*, at 688 (finding it "now well established that the words themselves must be set out"); 2 Joseph Chitty, et al., *Treatise on Pleading, and Parties to Actions, with Second and Third Volumes Containing Precedents of Pleadings* 636 n.z (13th Am. ed. 1859) ("The words themselves should be stated . . . .").

[5] *See, e.g.*, *Glassdoor, Inc. v. Super. Ct.*, 215 Cal. Rptr. 3d 395, 406 (Cal. Ct. App. 2017) ("In defamation cases California follows a similar pleading rule, under which 'the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint.'" (quoting *Kahn v. Bower*, 284 Cal. Rptr. 244, 252 n.5 (Cal. Ct. App. 1991))); *Laux v. Baker*, 238 N.E.3d 692, 699 (Ind. Ct. App. 2024) ("Under this heightened standard, the plaintiff must specifically 'set out the alleged defamatory statements[] in the complaint[.]'" (quoting *Ali v. All. Home Health Care LLC*, 53 N.E.3d 420, 428 (Ind. Ct. App. 2016))); *Tri-County Retreading, Inc. v. Bandag, Inc.*, 851 S.W.2d 780, 785 (Mo. Ct. App. E.D. 1993) ("It is necessary to state the specific words which are argued to be defamatory in order to state a cause of action."); N.Y. C.P.L.R. 3016(a) ("In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally."); Wis. Stat. § 802.03(6) (same).

[6] Defamation is not the only cause of action for which the common law imposed a heightened-pleading requirement.  A claim of fraud must be pleaded with particularity.  *See Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295 (1996) ("[W]here fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defence accordingly, and since [fraud] must be clearly proved it must be distinctly stated." (second and third alterations in original) (quoting *Ciarochi v. Ciarochi*, 194 Va. 313, 315 (1952))); *Dickenson v. Bankers Loan & Invest. Co.*, 93 Va. 498, 502 (1896) ("Fraud is a conclusion of law, and the facts relied on to constitute it must be stated in the bill, and must, when taken together, be sufficient to make out a case of fraud.").  *Dickenson* cited Justice Story's treatise (among others) for that requirement.  93 Va. at 502 (citing 1 Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereto, according to the Practice of the Courts of Equity of England and America* §§ 251-52 (1838)).  Justice Story, in turn, traced that requirement to *Palmer v. Mure*, 2 Dick. 489, 21 Eng. Rep. 359 (Ch. 1773).  Story, *supra*, § 251, at 211 n.3.  The court in *Palmer* said that "the charge of fraud must be pointed, and not a general charge."  2 Dick. at 490, 21 Eng. Rep. at 360.

action." *Wright v. Clements*, 3 B. & Ald. 503, 507, 106 Eng. Rep. 746, 747 (K.B. 1820) (Abbott, C.J.). A defendant, "if he thinks fit, may demur, and bring before the Court the question of whether [the words] amount to a libel." *Wood v. Brown*, 6 Taunt. 169, 170, 128 Eng. Rep. 998, 999 (C.P. 1815). As one 19th century treatise put it, "[t]he object, or one of the objects, of obliging a plaintiff to set forth in his complaint the very words complained against, is[] that the defendant may, if he desires it, by demurring, have the opinion of the court upon the actionable quality of the words." John Townshend, *Treatise on the Wrongs Called Slander and Libel, and on the Remedy by Civil Action for Those Wrongs, to Which Is Added in This Edition a Chapter on Malicious Prosecution* § 331, at 576 (3d ed. 1877); *see also* Robinson, *supra*, at 688 ("The generality and uncertainty of the charge is a decisive objection to it. By this mode of declaring the defendant is deprived of an opportunity of pleading matter which he might properly set up (if he was apprised by the declaration of the specific words) . . . .").

Second, since "each slander constitutes a new cause of action," *Birchfield*, 173 Va. at 216, some jurists thought that the heightened-pleading requirement was needed to give preclusive effect to a judgment. "Unless the very words are set out, by which the charge is conveyed, it is almost, if not entirely impossible to plead a recovery in one action in bar of a subsequent action for the same cause." *Cook*, 3 M. & S. at 116, 105 Eng. Rep. at 554.

Bennett does not dispute that his complaint failed to plead the exact words of the allegedly defamatory statements he attributes to Lundh. He seeks to sidestep that requirement in three ways, but none of those paths gets around the pleading defect.

First, Bennett insists that the facts set forth in the complaint sufficed for a reasonable person to conclude that Lundh was the source of the false rumors that allegedly provided the basis for the adverse employment actions against him. We can assume without deciding that he is right about that. But crediting Bennett with that inference ignores the legal question presented

- 7 -

here: whether Bennett's failure to plead the exact words attributed to Lundh required his defamation claim to be dismissed.

Second, Bennett cannot avail himself of the breathing room afforded the defamation plaintiff in *Birchfield* because Bennett, unlike the plaintiff there, failed to file a bill of particulars to supply the information missing from his complaint. 173 Va. at 216-17. The plaintiff's original petition in *Birchfield* alleged that the defendant falsely said (1) that the plaintiff had been forced to resign or would be fired, and (2) that the plaintiff had "forged" someone's name to one affidavit and prepared other affidavits with signatures that were not "genuine." *Id.* at 214-15. The Court agreed that the original petition did "not purport to contain the exact words charged to have been used by defendant, which is necessary to correctly state a good cause of action for libel, slander or insulting words." *Id.* at 215. It also failed to set forth "the time, the place, the name of defendant's agent and the names of the parties to whom the slander was published or communicated." *Id.* at 217. The Court said that "[w]hile it is better pleading to state these in plaintiff's original pleading, when such details are not set forth in such pleading, they are proper matters to be stated in a bill of particulars, *which was done in this case*." *Id.* (emphasis added). Unlike the plaintiff in *Birchfield*, however, Bennett failed to file a bill of particulars despite being ordered to do so.

Third, the trial court did not prematurely dismiss Bennett's complaint before he could pursue discovery to unearth Lundh's exact words. Bennett says that he should have had until "the close of pre-trial discovery" to supply that information. Bennett Br. 12. But again, a central purpose of the exact-words requirement at common law was to allow the defendant, on demurrer, to show that the alleged statement was not defamatory. *Wright*, 3 B. & Ald. at 507, 106 Eng. Rep. at 747; *Wood*, 6 Taunt. at 170, 128 Eng. Rep. at 999; Townshend, *supra* § 331, at 576. As our Supreme Court recognized more than a century ago:

> The correct practice is to dispose of a demurrer before decrees are entered upon the main issues of a case, the function of a demurrer being to prevent . . . discovery, or to save the expense of a protracted litigation by settling the rights of parties upon the matters of law arising upon the face of the bill, and avoiding the delay and costs of plea, answer, or proofs.

*Deckert v. Chesapeake W. Co.*, 101 Va. 804, 808 (1903); *cf. Ford Motor Co. v. Benitez*, 273 Va. 242, 252 (2007) (rejecting defendant's argument that it could plead affirmative defenses that were not factually supported because discovery might support them and the discovery cutoff had not yet arrived); *Ashcroft*, 556 U.S. at 678-79 (stating that the federal notice-pleading rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").[7]

The heightened-pleading requirement for defamation claims also dovetails with modern caselaw imposing on the trial court the gatekeeping function to evaluate threshold legal questions such as

- whether an allegedly defamatory statement carries sufficient "sting" to be actionable, *Schaecher*, 290 Va. at 94;

- whether the challenged statement is protected "opinion," *id.* at 103; *see also Handberg v. Goldberg*, 297 Va. 600, 667 (2019) ("often decided on demurrer, based on the alleged defamatory statements set forth in the complaint"); and

- for defamation claims by public-figure plaintiffs, whether the complaint alleges facts to show that the defendant published the statement with "actual malice" under *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964); *see, e.g.*, *Patel v. CNN, Inc.*, 83 Va. App. 387, 418 (2025) ("[W]hen the plaintiff is a public official . . . , constitutional free speech principles require the specific publishers of the

---

[7] To be sure, the doors of discovery in Virginia generally open upon "commencement of the action." *See* Rules 4:5(a) (depositions), 4:6(a) (depositions upon written questions), 4:8(a) (interrogatories), 4:9(b)(i) (document requests), and 4:11(a) (requests for admission). The filing of a demurrer or other dispositive motion does not stay the defendant's obligation to respond to discovery unless the trial court enters an order to that effect. *See* Rule 4:1(d)(1). We express no opinion about the standard a trial court should apply when determining whether to stay discovery pending the resolution of a demurrer or dispositive motion. *See generally Murayama 1997 Trust v. NISC Holdings, LLC*, 284 Va. 234, 250 (2012); *Titan Am. v. Riverton Inv. Corp.*, 264 Va. 292, 307 (2002). Notably, Bennett did not serve any discovery during the nearly six months between when he filed the complaint and when the trial court sustained Lundh's demurrer.

false statement to subjectively know that the statement was false or harbor a belief that it was probably false and publish it anyway.").[8]

It would frustrate those important gatekeeping functions to allow a plaintiff to evade a demurrer through nonspecific allegations that give no more than the gist of what the defendant supposedly said.

For the same reason, we reject Bennett's claim that the trial court abused its discretion by giving him a "mere" 21 days to file a bill of particulars setting forth the defamatory statements verbatim, a time frame he alleges "was impossible . . . to meet."[9] As noted above, Bennett had six months in which he could have pursued discovery before his complaint was dismissed. *See* note 7 *supra*. Moreover, a plaintiff is not automatically entitled to discovery to properly plead a defamation claim. Lundh could have successfully demurred at the outset for Bennett's failure to plead the exact words of the alleged defamation. Instead, she sought that and other information through a bill of particulars. The trial court granted her request, ordering Bennett within 21 days to provide the defamatory statements "*in haec verba*," together with other information such as "the date of each publication of each statement" and the person "to whom each publication of each statement was made." We find no basis to conclude that the trial court abused its discretion by giving Bennett 21 days to file a bill of particulars that would fix the pleading defect in his complaint.

---

[8] *See* Susan M. Gilles, *Taking First Amendment Procedure Seriously: An Analysis of Process in Libel Litigation*, 58 Ohio St. L.J. 1753, 1798-1801 (1998) (noting that many States have heightened-pleading rules for defamation, and arguing that such requirements better protect First Amendment rights).

[9] Rule 3:7 provides that a trial court may order a bill of particulars "to amplify any pleading that does not provide notice of a claim or defense adequate to permit the adversary a fair opportunity to respond or prepare the case." The decision to grant or refuse a bill of particulars "lies in the sound judicial discretion of the trial court." *City of Portsmouth v. Weiss*, 145 Va. 94, 111 (1926).

CONCLUSION

After giving Bennett the chance to cure his pleading defect by filing a bill of particulars, the trial court properly sustained the demurrer and dismissed his complaint with prejudice because Bennett failed to plead the exact words of the defamatory statements he attributed to Lundh.

*Affirmed.*